UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY ZARA,<br><br>        Plaintiff,<br><br>    v.<br><br>DEVRY, INC.; DEVRY MEDICAL INTERNATIONAL, INC. dba ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE; and ALEXA FERRARI;<br><br>        Defendants. | Civil Action No. 1:16-cv-5156 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES, Plaintiff Anthony Zara ("Zara"), by and through his undersigned attorneys of record, and files this Brief in Support of a Verified Motion for Preliminary Injunction, requesting that the Court issue an immediate preliminary injunction forcing Defendant Ross University School of Veterinary Medicine ("RUSVM") to permit Zara to enroll in the next academic semester at RUSVM and complete his remaining two semesters.

Zara filed a Complaint against RUSVM, *et. al.*, initiating the case captioned above, based upon RUSVM's violation of Title IX of the Education Amendments of 1972 ("Title IX"). In the Complaint, Zara alleges that RUSVM discriminated against him based on his sex in its investigation, hearing, and pending appeal proceeding regarding false allegations of sexual harassment and general misconduct against Zara made by Defendant Alexa Ferrari ("Ferrari") that resulted in Zara's expulsion from RUSVM. The Complaint also includes a state law breach of contract claim, which is relevant to this motion.

Zara will suffer immediate and irreparable harm to his reputation, his education and to his career without immediate injunctive relief forcing RUSVM to revoke his expulsion. Also pressing

1

is Zara's ability to be lawfully present in St. Kitts pending his internal appeal, which depends on maintaining his status as a student. Because Zara is currently no longer a student at RUSVM, his visa is invalid, and he is now subject to deportation.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

This case arises from a series of false allegations of sexual and general misconduct made by another RUSVM student, Defendant Ferrari, against Zara. Zara incorporates by reference, as if fully set forth herein, paragraphs 1 through 68 of his Amended Complaint to provide additional factual background.

Defendant Ferrari and Zara, both veterinary students at RUSVM, were involved in a romantic relationship during much of 2015. Ferrari moved into Zara's apartment in April 2015, but Zara asked her to leave following discordance sharing the apartment. She left for one week but moved back in until June, when both moved to separate apartments. The coupled recommenced cohabiting in a shared lease apartment in August 2015 for two additional months. *Am. Compl.*, ¶¶ 10-18.

In October 2015, Ferrari became erratic and violent when Zara discussed living arrangement concerns. She bit and struck Zara and locked him out of their apartment, forcing Zara to contact leasing agents to extricate himself from the lease and obtain his security deposit and personal belongings. Despite being informed by Zara of Ferrari's assault against him, RUSVM security brushed off his concerns and instructed him to "let it go" and "just ignore her." Further erratic scenes by Ferrari ensued throughout the remainder of 2015; including stalking-like behavior, both online and in and around St. Kitts. *Am. Compl.*, ¶¶ 19-25.

On or around April 6, 2016, Defendant Ferrari lodged a false report with the St. Kitts' police. *Am. Compl.*, ¶26. In response, militarized police wielding machine guns violently arrested Zara outside a friend's residence. The attack Zara endured was brutal and left him battered, bloody, and traumatized. Fearing for his life during the beatings, Zara alternately attempted to run for his life and to defend himself. *Id.*, ¶¶ 29-33. Instead, he ended up in the St. Kitts jail for several days. *Id.*, ¶ 36-41.

Only days after his release from jail, Zara was met on campus by a team of RUSVM security and administration, escorted like a criminal to RUSVM administration's offices, and given a list of the allegations against him falsely reported by Ferrari and stemming from his biased arrest. *Am. Compl.*, ¶¶ 43-44; *Notice of Interim Suspension*, attached hereto as Exhibit 1. RUSVM's investigations into the false allegations against Zara were brief and one-sided. RUSVM's Student Handbook mandates that investigations must be impartial and thorough, yet the school only investigated the charges for two days before contacting Zara on Wednesday, April 13, 2015, to set a hearing for Friday, April 15, 2015. Although Zara received a preliminary writing indicating potential violations that were subject to investigation, RUSVM never provided the requisite writing denoting the charges he had to face at the conduct hearing. *Am. Compl.*, ¶¶ 61-62.

In complete contravention of RUSVM's disciplinary rules, Zara was given virtually no opportunity prepare for the April 15 conduct hearing. RUSVM allowed Zara less than one business day to compile and submit documents to present at the hearing and granted him only one hour to review documents RUSVM planned to present against him. *Am. Compl.*, ¶¶ 63-64. The subsequent hearing was incredibly biased and deferential to Defendant Ferrari's account of the events in question.

At the hearing on April 15, 2016, Zara was barely permitted to mount a defense, with the panel refusing to permit several of Zara's witnesses and entirely ignoring the testimony of others. In fact, several of Zara's witnesses were threatened with violations if they did testify and, instead, notes from the faulty investigation were presented as witness statements in contravention of conduct panel policy. The panel entirely ignored and refused to even consider that Zara was falsely accused, beaten, and arrested by St. Kitt's police based on Defendant Ferrari's fabricated claims *Am. Compl.*, ¶¶ 65-67. Zara was found in violation of harassing Ferrari and several additional violations stemming from his April 6, 2016, arrest by St. Kitt's police and was summarily expelled without warning. *Id.*, ¶ 69; *Student Outcome Letter*, attached hereto as Exhibit 2.

Zara is in the process of appealing the hearing panel's decision. *Appeal Letter*, attached hereto as Exhibit 3. Zara's appeal points out numerous procedural errors in the investigation and April 15 hearing. *Am. Compl.*, ¶ 70; *id*. Zara's appeal put RUSVM on notice that RUSVM had discriminated against Zara based on his sex by failing to provide prompt, thorough, or impartial investigation and hearing. RUSVM had also breached its contract with Zara by failing to comply with its own policies and procedures.

For example, RUSVM agent, Mr. Fazio, served as both lead investigator and head of the disciplinary panel and demonstrated extreme prejudice against Zara. In fact, during the interviews, Fazio told several of the interviewees during the investigation that they "shouldn't be friends with someone like Zara." Instead of authenticating written witness statements at the hearing, Fazio's investigation notes and muddled quotes taken out of context were presented as truths. The witnesses who did speak favorably on Zara's behalf at the hearing faced sanctions; RUSVM pursued disciplinary charges against them alleging dishonesty *Am. Compl.*, ¶ 67. Other witnesses were ignored entirely. Testimony favorable to Zara's character and corroborating his rendition of

4

the truth, such as the property manager's corroboration that Zara did not disrupt the peace at the apartment he shared with Defendant Ferrari, was ignored by the hearing panel in favor of Ferrari's biased and retaliative account of the events in question. *Id.*, ¶ 65.

Prior to facing the panel, Zara had never been in any trouble or even investigated. However, Zara was provided absolutely no clarification as to how he could present his side at the hearing *Am. Compl.*, ¶ 63. He was not informed that he could be silent without detriment; instead, he was badgered by the panel who misconstrued even his own statements. *Id*.

In stark contrast to Zara's treatment by RUSVM, Defendant Ferrari faced total immunity from sanction for her egregious actions. She was often volatile, erratic, and violent in her relationship with Zara, causing chaos that spilled out and disrupted the community when she repeatedly locked Zara out of his own apartment without cause. *Am. Compl.*, ¶ 19. She intentionally inflicted injury by her own actions and, by calling St. Kitts police and lodging false reports, is culpable for Zara's extensive beating because RUSVM made students aware of St. Kitts police propensity to corruption and violence. *Id.*, ¶ 26. She damaged and destroyed many of Zara's personal belongings following their breakup and pursued damaging his reputation and well-being by spreading falsehoods and engaging in stalking behavior after he removed his name from their apartment lease, which resulted in her having to pay an additional security deposit and rent. *Id.*, ¶¶ 23-25.

## II.

## **LEGAL ANALYSIS AND ARGUMENT**

Zara respectfully requests that this Court compel RUSVM to permit him to enroll as an active student to complete his Spring 2016 term and finish his two additional classes pending the resolution of his Complaint based on sex discrimination and state law claims. Injunctive relief is

5

appropriate because Zara will suffer irreparable harm if he is permanently expelled from RUSVM whereas neither RUSVM nor Ferrari will not be harmed by the injunction.

In *Winter v. National Resources Defense Council, Inc.*, the United States Supreme Court directs, "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. 7, 20 (2008). In the Seventh Circuit, the standard for issuance of an injunction is twofold: first, a court must determine whether the movant has any likelihood of success; and, if so, whether he will suffer irreparable harm if he does not receive the injunction he seeks. *King v. DePauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014).

The analysis of these factors demonstrates that the balance tips heavily in favor of granting the injunction and allowing Zara to complete his final semesters at RUSVM.

**A. Zara Is Likely to be Successful on the Merits on the Federal and State Law Claims Against RUSVM.**

Zara is likely to prevail on his federal and state law claims against RUSVM. The likelihood of success on the merits on Zara's Title IX claims and state law implied contract claims are apparent on the basis of the records of the investigation and hearing.

**1. Zara Is Likely to be Successful on the Merits of His Title IX Claim.**

Title IX guarantees that "[n]o person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Accordingly, "Title IX bars the imposition of university discipline where gender is a motivating factor in discipline." *Yusuf v. Vassar College*, 35 F. 3d. 709, 715 (2nd Cir. 1993).

6

When the decision to initiate a proceeding or the severity of the punishment is affected by a student's gender, the aggrieved party should prevail on the basis of selective enforcement. *Id*. To sustain a selective enforcement claim, the pleading party must point to a "particularized allegation that would allowed the court to infer a causal connection between his treatment and gender bias." *Ludlow v. Northwestern University*., 2015 WL 508431 (N.D. Ill. Feb. 5, 2015). In fact, a male student's selective enforcement claim against a university's expulsion was recently upheld when the university failed to even investigate a reported sexual assault committed against the expelled male by the complaining female student. *Marshall v. Indiana University*, --- F.Supp.3d --- (2016), 2016 WL 1028362 (S.D. Ind. March 15, 2016). As that court explained, "Defendants cannot credibly argue that the issue of intentional gender discrimination is not factually alleged by Marshall's assertion of selective, gender-based enforcement against Marshall personally" when the male student alleged in his complaint that the school denied him the right to an investigation into his allegations that he was the victim of abuse, but the disciplinary office was willing to investigate a female's claims against him on comparable facts. *Id*.

      The holdings by courts in this Circuit, as described above, are relevant and applicable to the facts in this case involving Zara's situation with RUSVM's Disciplinary Panel and Defendant's Ferrari's volatile and erratic behavior towards him. Zara's Complaint alleges that false and belated charges of harassment were made against him both with the St. Kitts police and at RUSVM only after he repeatedly tried to sever all romantic and financial ties to Defendant Ferrari; with his prior attempts to withdraw and disengage resulting in, *inter alia*, Ferrari angrily attacking and biting him. The abusive nature of the allegations Ferrari levied against Zara, which RUSVM zealously pursued, compared to RUSVM's blatant refusal to even consider pursuing similar charges against

7

Ferrari based on her assaultive and vindictive behavior towards Zara over the course of the past year can only be explained as obvious gender bias.

Zara approached RUSVM reporting grave concerns about Defendant Ferrari's abusive behavior in their relationship, but his complaints were entirely dismissed by RUSVM security agents and he was instructed to let it go and to ignore Ferrari. However, RUSVM agents swiftly moved to expel Zara, denying him even the most basic right to a fair hearing in contravention of the mandates of the RUSVM Student Handbook and Title IX to provide adequate, reliable and impartial investigation of such charges.

RUSVM ignored Title IX's fundamental procedural requirements by suspending and then expelling Zara prior to conducting a full investigation or hearing while taking Defendant Ferrari's complaints as truth using the inappropriate standard of "more likely than not." Zara's initial suspension was meted out solely on the basis of Defendant Ferrari's naked complaint to RUSVM despite the fact that Zara posed no threat to anyone on campus and Ferrari provided zero evidence in support of her claims.

RUSVM apprehended Zara coming out of class after completing an exam, walked him with four security escorts down to administration like a criminal, and summarily suspended him without even considering his side of the story. The pursuant conduct hearing failed to provide even the most scant procedural protections in violation of RUSVM's contractually provided due process rights. Instead, RUSVM's disciplinary policy proceeded on a theory of guilty because a male was accused of assaulting a female, a growing and alarming trend in college disciplinary proceedings across the country in response to the U.S. Department of Education's "Dear Colleague" letter (referenced below).

The preponderance of the evidence or "more likely than not" standard, urged by the U.S. Department of Education's Office for Civil Rights' 2011 Dear Colleague Letter 3 (Apr. 4, 2011), which may be found at: http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html, as a condition for receipt of federal funds under Title IX, is insufficient to accommodate Zara's due process rights when a student is accused of sexual assault and the penalty of expulsion is imposed. The evidentiary standard "more likely than not" is traditionally a civil standard appropriate "where society has a minimal concern with the outcome." *Addington v. Texas*, 441 U.S. 418, 423 (1979). In fact, the preponderance of evidence standard has resulted in similarly discriminatory effects throughout the country where colleges are giving the female complainant's male-to-female allegations much more credence than the male student's equally compelling version of the circumstances in question. *See, infra, Doe v. Brown Univ.*, No. CV 15-144 S, 2016 WL 715794, at *1 (D.R.I. Feb. 22, 2016).

Indeed, several district courts throughout the country have begun to acknowledge this disparity and have ruled accordingly: "[W]here a student is facing serious disciplinary consequences, such as expulsion or dismissal from school, a number of district courts have determined that the student 'must not be punished except on the basis of substantial evidence.'" *Bridgeforth v. Popovics*, No. 8:09-CV-0545 GTS/RFT, 2011 WL 2133661, at *9 (N.D.N.Y. May 25, 2011) (*citing Johnson*, 233 F.Supp.2d at 248 (*citing Carey on Behalf of Carey v. Maine Sch. Admin. Dist. # 17*, 754 F. Supp. 906, 919 (D. Maine 1990))); Case 1:15-cv-00726-TWP-DKL Document 14 Filed 08/21/15 Page 18 of 33 PageID #: 223 19 *LaBrecque ex rel. T.N. v. Sch. Admin. Dist. No. 57*, 06–CV–0016, 2006 WL 752776, at *2 (D. Me. Mar. 22, 2006); *Le v. Univ. of Med. and Dentistry*, 08–CV–0991, 2009 WL 1209233, at *13 (D.N.J. May 4, 2009) (*citing Sill v. Penn. State Univ.*, 462 F.2d 463 (3d Cir. 1972)).

Particularly in the case of charges of male-to-female sexual assault, courts are recognizing "the pressure on universities from the OCR has caused a backlash against male students accused of sexual assault" and are permitting Title IX actions by the wrongfully disciplined collegians. *Doe v. Brown Univ.*, No. CV 15-144 S, 2016 WL 715794, at *1 (D.R.I. Feb. 22, 2016) (male student's Title IX claim upheld in response to University's motion to dismiss); *see also Prasad v. Cornell University*, No. 15-cv-00322 Document 32 (N.D.N.Y. Feb. 24, 2016); *Doe v. Georgia Institute of Technology*, No. 1:15-CV-4079-SCJ Document 40 (N.D. Ga. April 19, 2016); *Marshall v. Indiana University*, --- F.Supp.3d --- (2016), 2016 WL 1028362 (S.D. Ind. March 15, 2016); *Doe v. Pennsylvania State Univ.*, No. 4:15-cv-02072-MWB Document 49 (M.D. Pa. Apr. 4, 2016); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766 (D. Md. 2015); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015).

The harmful effects of the preponderance of the evidence standard are amplified in the case before the Court; Defendant Ferrari's allegations received inappropriate deference due to her sex and the skewed due process standard imposed by the Dear Colleague letter, inflicting maximum damage on Zara because he was a male student accused by a female. And RUSVM's panel did little to protect Zara's rights following the false allegations levied against him.

Zara was not given an equal chance to defend himself at the hearing; specifically because he was a male being accused by a female. There should be no higher concern for the outcome a criminal and sexual assault case, especially one as here where Zara has summarily lost his ability to attend school following baseless and abusive allegations propagated by his ex-girlfriend for the exact purpose of damaging Zara's reputation and future that he has worked so hard to accomplish here. For all of the foregoing reasons, Zara is likely to succeed on the merits of his breach of contract claim against RUSVM.

**2.     Zara Is Likely to be Successful on the Merits of His Breach of Contract Claim.**

RUSVM acted with capricious, willful, and wanton indifference when it illegally breached the terms of its own Student Handbook policies in accusing, charging, and holding conduct hearings without regard to Zara's contractual rights as an accused student. It has long been established that the "basic legal relation between a student and a private university or college is contractual in nature," so that "a student may establish that an implied contract existed between himself and the university that entitled the student to a specific right, such as the right to a continuing education or the right not to be suspended without good cause." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992). Indeed, the "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract." *Id*.

RUSVM's Student Handbook proscribes disciplinary procedures in the event of a conduct or sexual misconduct violation. Such procedures provide that any charge of misconduct should be submitted as soon as possible after the event takes place; all RUSVM colleagues are required to immediately provide any information received about any actual or suspected sex and/or gender-based misconduct impacting the RUSVM community to appropriate officials; a prompt, fair and impartial investigation will be initiated in the event of a sexual misconduct violation; all charges shall be presented to the respondent in writing, in which a date and time is set for a hearing within a timeframe reasonable under the circumstances, usually not less than two, nor more than 15 calendar days after the respondent has been notified of the charges; conduct disciplinary hearings will be impartial; parties will be given access to the identified information that is available before the hearing which will be considered by the conduct panel; parties shall be allowed to present witnesses; and pertinent records, exhibits, including video and written statements, may be accepted

11

as evidence for consideration by a conduct panel at the discretion of the Conduct Administrator/Chairperson. *RUSVM Student Handbook*, attached hereto as Exhibit 4, ¶¶ 1.8.3, 1.10.1.2-1.10.1.3.

As stated in the Complaint initiating this case and elsewhere herein, RUSVM wholly failed to respond impartially, investigate appropriately, or competently adjudicate the allegations against Zara. Defendant Ferrari's complaints were processed by RUSVM in an untimely, insufficient, one-sided, and improper manner, and addressed by a conduct panel that was far from impartial or competent. RUSVM's unfair tactics included misconstruing statements and threatening witnesses with conduct violations for telling the truth. Moreover, the RUSVM agent who investigated Ferrari's complaints is the same agent who headed the conduct panel that sat in judgment of Zara. RUSVM ignored its own mandates to provide Zara written notice of the charges against him, to provide him reasonable notice of the hearing, to provide Zara with access to the information planned to be used against him, or to allow Zara to present appropriate witnesses in his own defense. Instead, Defendant Ferrari's claims against Zara were given one-sided, highly preferential treatment in her favor at the expense of Zara's contractual rights and, ultimately, his education and career.

In contrast to the unduly deferential credence it gave to Defendant Ferrari's claims, RUSVM completely ignored Zara's reported concerns with Ferrari's conduct throughout 2015 and 2016. RUSVM failed to identify or even seriously acknowledge Zara's reports of Ferrari's sex and gender-based misconduct and abusive behavior against him in October 2015. For all of the foregoing reasons, Zara is likely to succeed on the merits of his breach of contract claim against RUSVM.

**B.      Zara Will Suffer Irreparable Harm That Outweighs Any Potential Harm to RUSVM.**

Irreparable harm is easily demonstrated when a student is confronted with removal from a university. In *King v. DePauw*, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014), the court affirmed the grant of an injunction ordering reinstatement of an undergraduate student pending the resolution of his Title IX and contract challenge to sexual misconduct disciplinary action taken against him. In that case, the court found "it inevitable that he would be asked to explain either situation by future employers or graduate school admissions committees, which would require him to reveal that he was found guilty of sexual misconduct." *Id*. The court recognized that "any explanation is unlikely to fully erase the stigma associated with such a finding." *Id*.

The same is true for Zara. RUSVM's s disciplinary findings, despite being completely arbitrary and erroneous, will "continue to affect him in a very concrete way, likely for years to come." *Id*. Like *King*, Zara will be forever forced to explain the gap in his academic record and account for the blemish on his disciplinary past. Moreover, RUSVM has continued to treat Zara inappropriately even after his expulsion on April 18, 2016. First, RUSVM recently pulled money from Zara's financial aid for the upcoming term, despite his expulsion. If Zara is expected to pay for classes, he should be permitted to attend them for credit towards his degree. Second, RUSVM has completely failed to respond to Zara's internal appeals request despite the appeals guarantees found in the RUSVM Student Handbook and assurances promised in the Student Outcome Letter dated April 18, 2016. *See Exhibits 2 and 4*.

Additionally, Zara will suffer irreparable harm if he is prevented from completing his last classes at RUSVM. Zara has only one semester of Veterinary classes to complete before progressing to clinical instruction. Permitting RUSVM to exclude Zara from his remaining semesters is the same as permitting RUSVM to further victimize Zara by jeopardizing his future

13

education and career, as he will not likely be able to transfer to another school. RUSVM's graduate school course load is a well-organized and institution-specific program, and it is unlikely that Zara will find another school to accept specialized credits. Moreover, Zara has committed substantial time and financial resources to obtaining a RUSVM degree, and his time and financial investment will be for naught if he is unable to receive such a degree.

In stark contrast, granting the requested injunction places RUSVM or Ferrari at little risk. Defendant Ferrari and Zara have not been in an established relationship or living together for several months, and Zara has complied with RUSVM's instructions to move on and ignore Ferrari's attempts to engage him any further. Ferrari waited almost a year to file complaints against Zara, and only did so abusively to damage Zara in response to him moving out and establishing a new residence and, subsequently, a new relationship. RUSVM had never disciplined Zara in the past nor had he faced any allegations of dangerous behavior or abuse to any member of campus other than Ferrari's baseless accusation. RUSVM findings related to St. Kitts police were caused by Ferrari, who compelled the police to attack and arrest Zara on the basis of her ridiculous and false police reports.

Nor would an injunction allowing Zara to complete his education harm the public interest. The only apparent public interest would be a public safety issue, but Zara does not pose a threat to public safety. The abusive, damaging attack on Zara by St. Kitts police was prompted by Ferrari's patently false police report meant to inflict the very results that followed. Rather, the public interest favors not allowing a student to be deprived of his educational opportunities on the basis of his sex and without due process of law, especially when the student has been attacked by both his accuser and the police for false charges. Further, St. Kitts police released Zara from their custody and have not restricted his access around the island. RUSVM has no reason to presume any danger to anyone

by Zara since the incidents giving rise to such assumption are false and were contrived for the exact purpose of inflicting damage on Zara's reputation.

**C.     There Is No Adequate Remedy at Law.**

There is no adequate remedy at law that could replace injunctive relief in this case. Zara has already been deprived of his education and his career, including his substantial investment of time and financial resources in both, for now. He will already have to account for the gap of time on his academic record; prolonging his readmission will further prejudice Zara when the charges against him are found to be arbitrary and erroneous. Given the nature of the RUSVM graduate program, a transfer from RUSVM to another institution to complete the program is virtually impossible. Graduate school programs are well-organized and institution-specific, and it is unlikely that Zara will find an unaffiliated school to accept specialized credits. Moreover, an attempt to transfer from RUSVM to another institution now will likely require Zara to explain his wrongful expulsion for sexual misconduct, which will be detrimental to Zara's ability to get into graduate school and obtain professional licensure and future employment.

## III.

## CONCLUSION

RUSVM's highly prejudicial treatment of Zara on the basis of his sex, and their illegal breach of contract has caused Zara myriad personal and professional harms that cannot be adequately compensated without immediate action to permit Zara to resume classes at RUSVM as quickly as possible. Because it is clear that Zara is likely to succeed on the merits of his Title IX and breach of contract claims and because of the irreparable injury he will face with prolonged exclusion from his academics, the balance of equities tips squarely in Zara's favor for receiving the requested injunction. Moreover, such an injunction serves the public interest.

For all of the foregoing reasons, Zara respectfully requests that the Court enter an injunction compelling RUSVM to restore Zara to the *status quo ante* and enroll him in classes at RUSVM immediately, and to grant such other and further relief as may be just and proper.

DATED this 17th day of May, 2016.

                                                **THE BACH LAW FIRM, LLC**

                                                */s/ Jason J. Bach*
                                                Jason J. Bach, Esq.
                                                7881 West Charleston Blvd., Suite 165
                                                Las Vegas, Nevada 89117
                                                Telephone: (702) 925-8787
                                                Facsimile: (702) 925-8788
                                                Email: jbach@bachlawfirm.com