Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY ZARA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEVRY, INC.; DEVRY MEDICAL INTERNATIONAL, INC. dba ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE; and ALEXA FERRARI;<br><br>　　　　Defendants. | Civil Action No. 1:16-cv-5156 |

**DECLARATION OF ANTHONY ZARA IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Anthony Zara, being first duly sworn, according to the law, depose and say:

1.　I am over the age of 18, mentally competent, have personal knowledge of the facts in this affidavit, except where stated upon information and belief, and if called upon to testify as to the statements made herein, I could and would do so.

2.　I am the Plaintiff in the above referenced matter, filed with the United States District Court for the Northern District of Illinois and submit this declaration in support of Plaintiff's Motion for Preliminary Injunction.

3.　Defendant Ferrari and I were both veterinary students at RUSVM and were involved in a romantic relationship during much of 2015. Ferrari moved into my apartment in March 29, 2015, but I asked her to leave following discordance sharing the apartment. She left for one week but moved back in until May, when we both moved to separate apartments. Ferrari and I recommenced cohabiting in a shared lease apartment in August 2015 for two additional months.

4.      In October 2015, Ferrari became erratic and violent when I discussed living arrangement concerns. She bit and struck me and locked me out of our apartment, forcing me to contact leasing agents to extricate myself from the lease and obtain my security deposit and personal belongings. When I informed RUSVM security of Ferrari's assault against me they brushed off my concerns and instructed me to "let it go" and "just ignore her." Further erratic scenes by Ferrari ensued throughout the remainder of 2015; including stalking-like behavior, both online and in and around St. Kitts.

5.      On or around April 6, 2016, Ferrari lodged a false report with the St. Kitts' police. In response, militarized police wielding machine guns violently arrested me outside a friend's residence. The attack I endured was brutal and left me battered, bloody, and traumatized. Fearing for my life during the beatings, I alternately attempted to run for my life and to defend myself. Instead, I ended up in the St. Kitts jail for several days.

6.      Only days after my release from jail, I was met on campus by a team of RUSVM security and administration, escorted like a criminal to RUSVM administration's offices, and given a list of the allegations against me falsely reported by Ferrari and stemming from my biased arrest. RUSVM's investigations into the false allegations against me were brief and one-sided. RUSVM's Student Handbook mandates that investigations must be impartial and thorough, yet the school only investigated the charges for two days before contacting me on Wednesday, April 13, 2015, to set a hearing for Friday, April 15, 2015. Although I received a preliminary writing indicating potential violations that were subject to investigation, RUSVM never provided the requisite writing denoting the charges I had to face at the conduct hearing.

7.      In complete contravention of RUSVM's disciplinary rules, I was given virtually no opportunity prepare for the April 15 conduct hearing. RUSVM allowed me less than one business

day to compile and submit documents to present at the hearing and granted me only one hour to review documents RUSVM planned to present against myself. The subsequent hearing was incredibly biased and deferential to Ferrari's account of the events in question. Although Ferrari herself was not present nor did she give testimony to support their allegations.

8. At the hearing on April 15, 2016, I was barely permitted to mount a defense, with the panel refusing to permit several of my witnesses and entirely ignoring the testimony of others. In fact, several of my witnesses were threatened with violations if they did testify and, instead, notes from the faulty investigation were presented as witness statements in contravention of conduct panel policy. The panel entirely ignored and refused to even consider that I was falsely accused, beaten, and arrested by St. Kitt's police based on Ferrari's fabricated claims. I was found in violation of harassing Ferrari and several additional violations stemming from my April 6, 2016, arrest by St. Kitt's police and was summarily expelled without warning.

9. I am in the process of appealing the hearing panel's decision. My appeal points out numerous procedural errors in the investigation and April 15 hearing. My appeal put RUSVM on notice that RUSVM had discriminated against me based on my sex by failing to provide prompt, thorough, or impartial investigation and hearing. RUSVM had also breached its contract with me by failing to comply with its own policies and procedures.

10. For example, RUSVM agent, Mr. Fazio, served as both lead investigator and head of the disciplinary panel and demonstrated extreme prejudice against me. In fact, during the interviews, Fazio told several of the interviewees during the investigation that they "shouldn't be friends with someone like Zara." Instead of authenticating written witness statements at the hearing, Fazio's investigation notes and muddled quotes taken out of context were presented as truths. The witnesses who did speak favorably on my behalf at the hearing faced sanctions;

RUSVM pursued disciplinary charges against them alleging dishonesty. Other witnesses were ignored entirely. Testimony favorable to my character and corroborating my rendition of the truth, such as the property manager's corroboration that I did not disrupt the peace at the apartment I shared with Ferrari, was ignored by the hearing panel in favor of Ferrari's biased and retaliative account of the events in question.

11. Prior to facing the panel, I had never been in any trouble or even investigated. However, I was provided absolutely no clarification as to how I could present my side at the hearing. I was not informed that I could be silent without detriment; instead, I was badgered by the panel who misconstrued even my own statements.

12. In stark contrast to my treatment by RUSVM, Ferrari faced total immunity from sanction for her egregious actions. She was often volatile, erratic, and violent in her relationship with me, causing chaos that spilled out and disrupted the community when she repeatedly locked me out of my own apartment without cause. She intentionally inflicted injury by her own actions and, by calling St. Kitts police and lodging false reports, is culpable for my extensive beating because RUSVM made students aware of St. Kitts police propensity to corruption and violence. She damaged and destroyed many of my personal belongings following our breakup and pursued damaging my reputation and well-being by spreading falsehoods and engaging in stalking behavior after I removed my name from our apartment lease, which resulted in her having to pay an additional security deposit and rent.

///

///

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Execute this 27 day of May, 2016.

_____
ANTHONY ZARA