**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY ZARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:16-cv-05156 |
| v. | ) | |
| | ) | |
| DEVRY EDUCATION GROUP, INC.; | ) | Honorable Judge Andrea R. Wood |
| DEVRY MEDICAL INTERNATIONAL, | ) | Magistrate Judge Sidney Schenkier |
| INC.; ROSS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, SCHOOL OF VETERINARY | ) | |
| MEDICINE (ST. KITTS) LIMITED; and | ) | |
| ALEXA FERRARI | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION**
**TO DISMISS PLAINTIFF'S CLAIMS AGAINST DEFENDANTS DEVRY EDUCATION**
**GROUP INC., DEVRY MEDICAL INTERNATIONAL, INC., AND ROSS UNIVERSITY**
**SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE (ST. KITTS)**
**LIMITED**

Defendants DeVry Education Group Inc. (DVG), DeVry Medical International, Inc.

(DMI) and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts)

Limited (RUSVM) (collectively, "Defendants") respectfully submit this memorandum of law in

support of their motion to dismiss all the claims brought against them in this lawsuit. In support

of their motion, Defendants state as follows:

**Introduction**

This case involves legal claims made by a man living in St. Kitts against a St. Kitts

veterinary school arising solely from events that took place in St. Kitts, which were witnessed by

members of the St. Kitts police force and several other witnesses living and working or attending

school in St. Kitts. Plaintiff has asserted no legitimate basis for litigating such a dispute in this

27157129v.2

Court.  There is none.  Indeed, there is no basis for litigating this dispute anywhere in the United States.

Plaintiff Anthony Zara is suing RUSVM for expelling him from Ross University School of Veterinary Medicine in St. Kitts.  Specifically, he claims that his expulsion violated Title IX of the Educational Amendments of 1972, breached a contract between Plaintiff and RUSVM, and constituted negligence and intentional infliction of emotional distress.  The Court, however, has no personal jurisdiction over RUSVM, which is a corporate entity organized under St. Kitts law and maintaining its principal place of business in St. Kitts.  Regardless, Title IX — a statutory provision of the United States Code — does not apply to conduct occurring in St. Kitts (or anywhere else outside the borders of the United States).  As a result, Plaintiff's invocation of Title IX would fail to state a cognizable legal claim, even if the Court could assert personal jurisdiction over RUSVM.  Absent any cognizable claim under Title IX, Plaintiff's lawsuit consists entirely of common law tort and contract claims.  Even if the Court could assert personal jurisdiction over RUSVM, those common law claims should be dismissed on *forum non conveniens* grounds — as they should be litigated in St. Kitts, where the expulsion occurred, where all the witnesses relevant to this case are located, and whose law governs these additional causes of action.

Turning then to DMI and DVG, Plaintiff has named these two corporations as additional defendants to his claim for intentional infliction of emotional distress.  Plaintiff's complaint, however, alleges only that DMI and RUSVM are corporate subsidiaries of DVG.  This bare allegation is far from sufficient to state a cognizable claim against DVG or DMI for intentional infliction of emotional distress based on alleged conduct by RUSVM employees in St. Kitts.  That said, even if it were, the claims against DVG and DMI (like those against RUSVM) should

2

be dismissed on *forum non conveniens* grounds. For all these reasons, Plaintiff's claims against RUSVM, DMI and DVG should be dismissed in their entirety.

## Relevant Factual Background

1.      Defendant DVG is a corporation organized under the laws of Delaware and maintaining its corporate headquarters in Downers Grove, Illinois. (2d Am. Cmplt. ¶ 8.) Defendant DMI is a subsidiary of Defendant DVG. (*Id.* ¶ 7.) Plaintiff alleges that Defendant RUSVM is also a subsidiary of DVG. (*Id.* ¶ 7.)

2.      RUSVM is a Private Ordinary Company with limited liability organized under the laws of Saint Christopher and Nevis ("St. Kitts"). (2d Am. Cmplt. ¶ 6.) The academic campus it operates as Ross University School of Veterinary Medicine is located in St. Kitts. (*Id.*)

3.      Plaintiff Anthony Zara was a veterinary student at Ross University School of Veterinary Medicine in St. Kitts until he was expelled by RUSVM on April 18, 2016. (2d Am. Cmplt. ¶¶ 10, 69.)

4.      In his Second Amended Complaint, Plaintiff alleges that he is "currently a resident of the State of Florida." (2d Am. Cmplt. ¶ 5.) At the same time, he asserts in his motion for preliminary injunction that his "ability to be lawfully present in St. Kitts" is in danger and that he is "subject to deportation." (Plaintiff's Mot. for Preliminary Inj., Docket No. 4, at 1-2.)

5.      Defendant Alexa Ferrari is currently attending Ross University School of Veterinary Medicine in St. Kitts and is living in St. Kitts while attending school there. (2d Am. Cmplt. ¶ 11; Ferrari Decl. ¶¶ 2-3, attached hereto as Exh. A.) Prior to enrolling at Ross, she lived with her parents in the State of Tennessee. (Ferrari Decl. ¶ 4.)

6.      While they were both students at Ross, Plaintiff and Ferrari were engaged in a romantic relationship. (2d Am. Cmplt. ¶¶ 14-21.) At times during this relationship, the two of

them lived together.  (*Id.*)  Their relationship ended, and they ceased living together, in October 2015.  (*Id.* ¶ 21.)

7.      On or about April 6, 2016, Ferrari filed a police report regarding Plaintiff's actions towards her.  (*Id.* ¶ 26.)

8.      On April 6, 2016, Plaintiff was present at the apartment of classmate Lexi Nichols, along with several other Ross students and his new girlfriend Justeen Borrecco.  (*Id.* ¶ 27.)

9.      Upon leaving Nichols' apartment, Plaintiff had an encounter with members of the St. Kitts police force, who informed Plaintiff that he was going to be arrested.  (Cmplt. ¶ 30.) Plaintiff alleges that the police officers attacked and beat him as they arrested him, while also threatening unnamed "RUSVM witnesses" to the incident.  (Cmplt. ¶¶ 31-34.)

10.     Nichols and Borrecco claim to have witnessed the police beating Plaintiff. (Docket Nos. 16-4 and 16-5.)

11.     Plaintiff alleges that while he was in jail in St. Kitts, Ross Security officer Devon Warner observed him in his jail cell.  (2d Am. Cmplt. ¶ 37.)  Warner is currently living in St. Kitts and working for RUSVM.

12.     Plaintiff claims that on April 11, 2016, while at Ross, Albert Du Plessis, Hazarie Ramoutar, and Jeff Fazio, along with four security guards, escorted him to Fazio's office.  (2d Am. Cmplt. ¶ 43.)  Du Plessis is Ross's Director of Safety and Security.  (Fazio Decl. ¶ 4, attached hereto as Exh. B.)  Ramoutar is Ross's Director of Student Experience.  (*Id.* ¶ 5.)  Fazio is Ross's Student Engagement and Professional Standards Specialist.  (*Id.* ¶ 3.)  Fazio, Du Plessis, and Ramoutar are all currently living in St. Kitts and working for RUSVM.  (*Id.* ¶ 10.)

27157129v.2

13.     Plaintiff claims that someone from Ross handed him a letter on April 11, 2016, informing him that he was being suspended pending investigation, as a result of complaints filed against him.  (2d Am. Cmplt. ¶ 44, Ex. 1.)  The letter was signed by Dr. Charles Edward Wallace, Interim Associate Dean for Student and Alumni Affairs.  (*Id.*; Fazio Decl. ¶ 6.)  Wallace is currently living in St. Kitts and working for RUSVM.  (Fazio Decl. ¶ 10.)

14.     On April 15, 2016, Ross held a Student Conduct Panel Hearing in St. Kitts to evaluate Plaintiff's conduct and determine whether disciplinary action would be appropriate.  (2d Am. Cmplt. ¶¶ 63, 66; Fazio Decl. ¶ 7.)  The Conduct Panel presiding over the hearing and making the disciplinary decision based on the hearing consisted of Fazio and four Ross faculty members:  Dr. Eric Pope, Dr. Mary Anna Thrall, Dr. Fortune Sithole, and Dr. Christa Ann Gallagher.  (Fazio Decl. ¶ 7.)  Plaintiff contends that "Fazio was at the helm of the . . . hearing."  (2d Am. Cmplt. ¶ 68.)  Pope, Thrall, Sithole and Gallagher are all currently living in St. Kitts and working for RUSVM.  (Fazio Decl. ¶ 10.)

15.     In addition to Plaintiff, Plaintiff's and Ferrari's former landlords David and Laura Wright and six Ross University students testified at the Student Conduct Panel Hearing.  (Fazio Decl. ¶ 8.)  All eight currently live in St. Kitts.  (*Id.* ¶ 10.)  According to testimony offered at the hearing, the Wrights witnessed events incident to Plaintiff's and Ferrari's relationship and co-habitation, and the students each witnessed some portion of Plaintiff's actions on the night of April 6, 2016.  (*Id.* ¶ 8.)

16.     Three Ross University Security Officers also testified at the hearing:  Leroy Swanston, Tanaca Browne, and Warner.  (*Id.* ¶ 9.)  According to testimony offered at the hearing, Officers Browne, Swanston, and Michael Williams all witnessed Plaintiff's arrest by the

St. Kitts police on the night of April 6, 2016. (*Id.* ¶ 9.) Swanston, Browne and Williams are all currently living in St. Kitts and working for RUSVM. (*Id.* ¶ 10.)

17.     On April 18, 2016, Fazio sent Plaintiff a letter notifying him that the Conduct Panel found him in violation of various provisions in the school's Code of Conduct and decided to expel him from Ross. (2d Am. Cmplt. ¶ 69, Ex. 2.)

## Argument

## I.     Legal Standards

Defendant RUSVM moves to dismiss all four claims made against the school in the Second Amended Complaint, pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, RUSVM moves to dismiss Plaintiff's Title IX claim pursuant to Rule 12(b)(6) for failure to state a claim and all the remaining claims against it on *forum non conveniens* grounds. Defendants DVG and DMI move to dismiss the single claim brought against them pursuant to Rule 12(b)(6) for failure to state a claim or, in the alternative, on *forum non conveniens* grounds.

### A.     Rule 12(b)(2)

It is Plaintiff's burden to demonstrate that the Court has personal jurisdiction over RUSVM. *See Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1020 (N.D. Ill. 2004). In deciding a motion to dismiss for lack of personal jurisdiction, all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by actual evidence from outside the complaint. *See id.*; *see also Moran Indus. v. Higdon*, Case No. 07-cv-2008, 2008 WL 4874114, *3 (N.D. Ill. June 26, 2008).

### B.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of allegations in the plaintiff's complaint. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's

"complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### C.    *Forum Non Conveniens*

The common law doctrine of *forum non conveniens* "allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *See Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). As with motions challenging personal jurisdiction, courts may consider affidavits submitted in support of a motion to dismiss on the basis of *forum non conveniens*. Indeed, "courts often decide the issue of *forum non conveniens* based only on affidavits submitted by the parties." *See Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, Case No. 14-cv-7386, 2015 WL 4598809, *3 (D.N.J. July 29, 2015) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).

## II.    **Plaintiff's Claims Against RUSVM Should Be Dismissed.**

### A.    **Plaintiff Has Not Established (and Could Not Establish) the Court's Personal Jurisdiction Over RUSVM.**

Plaintiff's claims against RUSVM should be dismissed for want of personal jurisdiction. Federal courts recognize two types of personal jurisdiction: specific and general. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). Specific jurisdiction may be invoked only when the claim at issue is "linked to the activities or contacts with the forum." *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). General jurisdiction exists "only when the organization is 'essentially at home' in the forum state" (*i.e.*, generally only when the defendant's state of incorporation or principal place of business is found within the forum state). *See id.*; *see also Daimler*, 134 S. Ct. at 760.

Here, Plaintiff's own Second Amended Complaint alleges that all the relevant conduct in this case occurred in St. Kitts, that RUSVM is incorporated under the laws of St. Kitts, and that RUSVM operates its academic campus in St. Kitts. The Second Amended Complaint does not assert any connection whatsoever between RUSVM and the State of Illinois — or even the United States of America. Much less does it include allegations sufficient to assert the Court's personal jurisdiction over RUSVM. Indeed, because RUSVM is "at home" in St. Kitts (not in the United States), neither this Court nor any other in the United States may assert general jurisdiction over RUSVM.

**B.      Even If the Court Could Assert Personal Jurisdiction Over RUSVM, Plaintiff's Title IX Claim Against RUSVM Would Be Properly Dismissed Because Title IX Does Not Apply To Conduct Occurring Outside the United States.**

It is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *See Morrison v. Natl. Australia Bank Ltd.*, 561 U.S. 247, 255 (2010 (citations omitted); *see also Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 690 (7th Cir. 2008) ("Congress has the power to impose liability for acts that occur abroad but have effects within the United States, but it must make the extraterritorial scope of a statute clear."). The courts' presumption against the extraterritorial application of American law is grounded on the premise that Congress "ordinarily intends its statutes to have domestic, not extraterritorial, application." *See Small v. United States*, 544 U.S. 385, 388-89 (2005). The presumption also "serves to protect against unintended clashes between our laws and those of other nations." *See EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991).

Here, Plaintiff cannot point to any language in Title IX clearly demonstrating Congressional intent apply the statute to conduct occurring outside the United States. In fact, the

plain language of the statute compels the opposite conclusion. The statute reads, in relevant part, as follows: "No person **in the United States** shall, on the basis of sex, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).

In light of this clear statutory language, the U.S. District Court for the Eastern District of New York easily dismissed an earlier Title IX case brought against another Caribbean school of veterinary medicine. *See Phillips v. St. George's Univ.*, Case No. 07-cv-1555, 2007 WL 3407728, *1, 5 (E.D.N.Y. 2007) ("Title IX's use of 'person in the United States' suggests that the statute applies only to persons located in the United States.") That said, the court in *St. George's* further noted that this language was not necessary to its conclusion: "Even assuming the phrase 'in the United States' is not dispositive on the issue, there is no contrary language—much less 'clear evidence'—in the statute to suggest Congress intended Title IX to apply extraterritorially." *Id.*

Similarly, in another case involving RUSVM, the Third Circuit affirmed the district court's holding that the Rehabilitation Act does not apply to conduct occurring in St. Kitts. *See Archut v. Ross Univ. Sch. of Veterinary Medicine*, 580 Fed. Appx. 90, 90-91 (3d Cir. 2014). Like Title IX, the Rehabilitation Act states that "[t]he RHA prohibits discrimination in any program or activity against any otherwise qualified individual with a disability in the United States." *See Archut v. Ross Univ. Sch. of Veterinary Medicine,* Case No. 10-cv-1681, 2012 WL 5867148, *4, 10 (D.N.J. Nov. 19, 2012), *Aff'd,* 580 Fed. Appx. 90 (3d Cir. 2014) (citing 29 U.S.C. § 794).

The Seventh Circuit reached a similar conclusion with respect to the Foreign Sovereign Immunities Act (FSIA). *See Autotech Tech. v. Integral Research & Development Corp.*, 499 F.3d 737, 749-50 (7th Cir. 2007). In that case, the court determined that the statute in question did not authorize a writ of execution to attach to a foreign property. *See id.* The court observed that "it is of no small moment that the FSIA authorizes execution *only against properties in the United States.*" *Id.* at 750 (emphasis added).

Title IX's statutory text makes it clear that Congress did not intend for Title IX to apply outside the borders of the United States. That said, even if the statutory language were not so clear, the Court would need clear evidence to the contrary — that Congress *did* intend for extraterritorial application — before it could permit Plaintiff to proceed with a Title IX claim based solely on conduct occurring within the jurisdictional boundaries of another country. No such evidence exists. Accordingly, Plaintiff's Title IX claim should be dismissed with prejudice.

### C. Even If the Court Could Assert Personal Jurisdiction Over RUSVM, It Should Dismiss Plaintiff's Common Law Claims on *Forum Non Conveniens* Grounds.

A federal district court may dismiss a suit over which it would normally have jurisdiction "in order to best serve the convenience of the parties and the ends of justice." *See Stroitelstvo*, 589 F.3d at 421. A district court has discretion to dismiss a case for *forum non conveniens* when "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience . . ." *See Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). When considering a motion to dismiss on *forum non conveniens* grounds, the Court must determine whether there is "an alternate forum that is both 'available' and 'adequate.'" *See Stroitelstvo*, 589 F.3d at 417. If an adequate alternate forum exists, the Court must then "consider whether a *forum non conveniens* dismissal would serve the private and public interests of the parties and the public interests of the alternative forums." *See id.* at 424.

10

**1.      St. Kitts Is An Alternate Forum
That Is Available And Adequate.**

St. Kitts is an available forum for Plaintiff's claims.  An alternate forum is available "if all parties are amenable to process and within the forum's jurisdiction."  *See Stroitelstvo*, 589 F.3d at 417.  As noted, RUSVM is organized pursuant to St. Kitts law, is based in St. Kitts, and is therefore plainly subject to process in that country.

A forum is adequate "if it provides the plaintiff with a fair hearing to obtain some remedy for the alleged wrong."  *See id.* at 421.  "It is not necessary that the forum's legal remedies be as comprehensive or as favorable as the claims a plaintiff might bring in an American court. Instead, the test is whether the forum provides some potential avenue for redress for the subject matter of the dispute."  *Id.*  Accordingly, even if a St. Kitts court were unable to provide precisely the same relief as this Court, that would not be sufficient to establish that St. Kitts is not an adequate forum.  *See id.* (rejecting the plaintiff's argument that a Bulgarian court "could provide only partial remedies" for the claims raised in the plaintiff's complaint and holding that the plaintiff could not show that relief in a Bulgarian court was "so clearly inadequate or unsatisfactory that it is no remedy at all.").

Here, St. Kitts is an adequate alternative forum for Plaintiff's claims.  St. Kitts recognizes breach of contract claims brought by students against universities.  *See Panchal v. Med. Univ. of the Americas, Ltd.,* Claim No. NEVHCV 2003/0096 (Eastern Caribbean Sup. Ct., St. Kitts and Nevis, Nevis Cir. Mar. 28, 2011) (attached hereto as Exh. C.)  American courts have also recognized St. Kitts as an adequate alternative forum for tort claims, such as negligence.  *See Sevison v. Cruise Ship Yours, Inc.*, Case No. 1996-cv-57, 1997 WL 530267, at *3 (D.V.I Aug. 15, 1997) (recognizing St. Kitts as "an adequate alternative forum," but ultimately denying motion to dismiss on other grounds).

### 2. Public and Private Interest Factors Favor St. Kitts

Having determined that St. Kitts is an available and adequate alternative forum, the question then turns to balancing public and private interest factors. *See Clerides*, 534 F.3d at 628 (holding that *forum non conveniens* public and private interest factors weighed in favor of dismissing the action in the Northern District of Illinois in favor of Cyprus or Greece).

The public interest factors include "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; [and] unfairness of burdening citizens in an unrelated forum with jury duty." *See id.*

Each of these public interest factors strongly favors St. Kitts: (a) St. Kitts has a "strong local interest" in resolving alleged contractual and tort law disputes arising from actions that took place entirely in St. Kitts, between a St. Kitts corporation and a student residing in St. Kitts, and involving multiple witnesses residing in St. Kitts (including multiple St. Kitts police officers); (b) St. Kitts law governs these common law claims; (c) litigating in St. Kitts would avoid any potential for conflicts of law; (d) litigating in St. Kitts would avoid the difficulty of this Court having to apply St. Kitts law; and (e) it is fundamentally unfair to burden Illinois's citizens with attending jury duty on this matter because Illinois has no connection to the dispute whatsoever.

The private interest factors also favor St. Kitts. These factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case expeditious and inexpensive." *See Clerides*, 534 F.3d at 628. Chiefly, private interest factors strongly favor St. Kitts as the appropriate forum for this case because *every witness* even

12

arguably relevant to this case appears to live in St. Kitts. Only Plaintiff's current residence is in question (given his seemingly contradictory filings in this regard), but if he does not live in St. Kitts, then he lives in Florida (not materially farther from St. Kitts than it is from Illinois). At any rate, *no one* relevant to this case lives in Illinois — not even Plaintiff or his counsel.

In sum, it would be wholly unreasonable for this Court to require a St. Kitts company to defend itself in Illinois when the legal questions arise under St. Kitts law, all the pertinent events took place in St. Kitts, every single defense and third-party witness lives in St. Kitts, and not even Plaintiff has any connection to Illinois. Accordingly, if the Court determines that it may exercise personal jurisdiction over RUSVM, then it nevertheless should dismiss Plaintiff's common law claims against RUSVM on *forum non conveniens* grounds, with prejudice to re-filing in any other United States court, but without prejudice to Plaintiff refiling his common law claims against RUSVM in St. Kitts.

### III.    Plaintiff's Claim Against DVG and DMI Should Be Dismissed for Failure To State a Claim or, Alternatively, on *Forum Non Conveniens* Grounds.

Plaintiff does not seriously allege any legal claims against DVG or DMI. In fact, these entities appear to be thrown into the caption of the Second Amended Complaint only because DVG maintains its headquarters in Illinois, and that allows Plaintiff to say *something* when the Court asks him why on earth he is bringing suit in this jurisdiction.

A careful review of the Second Amended Complaint reveals that Plaintiff's First, Second and Third Causes of Action are "Against Defendant RUSVM" only, that his Fourth Cause of Action is "Against All Defendants," and that his Fifth Cause of Action is "Against Defendant Ferrari" only. In other words, the only claim Plaintiff even purports to bring against Defendants DVG and DMI is his Fourth Cause of Action, for intentional infliction of emotional distress (IIED). Even so, this assertion (found in the title of the Fourth Cause of Action at page 19 of the

Second Amended Complaint) is belied by the narrative description of his IIED claim. Plaintiff claims that "Ferrari" and/or "RUSVM" did various things, but he never once even mentions DVG or DMI in the allegations underlying his IIED claim. (2d Am. Cmplt. ¶¶ 98-103.) In fact, the only allegations in the entire 115-paragraph complaint pertaining to DVG and DMI are found in Paragraphs 7 and 8. There, Plaintiff asserts only that DVG is a Delaware corporation with headquarters in Illinois and that RUSVM and DMI are subsidiaries of DVG. (2d Am. Cmplt. ¶¶ 7-8.)

There mere fact that DVG is the ultimate parent company of RUSVM (or that DMI is an intermediate subsidiary) is far from sufficient to plausibly allege that these parent companies are somehow liable for an alleged intentional tort caused by the four RUSVM faculty members and one RUSVM administrator who decided to expel Plaintiff from school. "A corporation's veil of limited liability will be pierced only when there is such unity of interest and ownership that the separate personalities of the corporation and the . . . other corporation no longer exist and when adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378-79 (7th Cir. 2008) (citations omitted). "Piercing the corporate veil is not favored and in general, courts are reluctant to do so . . . Accordingly, the party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a 'dummy or sham' for another person or entity." *Id.*

In *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F. 3d 537, 540 (7th Cir. 1998), the plaintiff argued that to attribute liability against a parent company for its subsidiaries' tortious acts, it simply needed to allege that the parent company controlled the subsidiaries. The Seventh Circuit rejected that argument outright, holding that "[p]arents of wholly owned subsidiaries

necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts." *See id.*

Simply put, because Plaintiff has not alleged a plausible legal claim against DMI or DVG, these defendants should be dismissed from the case entirely. That said, even if the Court were to disagree, the very same *forum non conveniens* arguments set forth above with respect to the common law claims against RUSVM would apply equally to the common law claim brought against DVG and DMI, leaving the Court with the option of dismissing the claim against DMI and DVG on that alternative ground, as well.

### Conclusion

For the reasons stated herein, Defendants DeVry Education Group Inc., DeVry Medical International, Inc., and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited respectfully request that the Court dismiss all the claims against them in this lawsuit.

**DATED: June 8, 2016**

Respectfully submitted,

DEVRY EDUCATION GROUP INC., DEVRY MEDICAL INTERNATIONAL, INC., and ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LIMITED.

By      *s/ Katherine F. Mendez*

Brian M. Stolzenbach
Katherine F. Mendez
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
(312) 460-5000
bstolzenbach@seyfarth.com
kmendez@seyfarth.com

15

27157129v.2

## **<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that on June 8, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Court's CM/ECF System, which will send electronic notification of such filing to the following:

Jason J. Bach
The Bach Law Firm, LLC
7881 W. Charleston Blvd.
Suite 165
Las Vegas, Nevada 89117
(702) 925-8787
jbach@bachlawfirm.com


*s/ Katherine F. Mendez*
Katherine F. Mendez

27157129v.2