**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY ZARA,<br><br>    Plaintiff,<br><br> v.<br><br>DEVRY EDUCATION GROUP, INC.;<br>DEVRY MEDICAL INTERNATIONAL,<br>INC.; ROSS UNIVERSITY SCHOOL OF<br>MEDICINE, SCHOOL OF VETERINARY<br>MEDICINE (ST. KITTS) LIMITED; and<br>ALEXA FERRARI;<br><br>    Defendants. | Civil Action No. 1:16-cv-5156<br><br><br><br>Honorable Judge Andrea R. Wood<br>Magistrate Judge Sidney Schenkier |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S CLAIMS
AGAINST DEFENDANTS DEVRY EDUCATION GROUP INC., DEVRY MEDICAL
INTERNATIONAL, INC., AND ROSS UNIVERSITY SCHOOL OF MEDICINE,
SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LIMITED**

Jason J. Bach
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorneys for Plaintiff Anthony Zara*

# TABLE OF CONTENTS

I.     INTRODUCTION…………………………………………...…………………...1

II.    STATEMENT OF FACTS………………………………………………….....2

III.   LEGAL STANDARD…..…………………………………………………...2

IV.   LEGAL ANALYSIS…………………………………………………………3

       A.    The Court Has Jurisdiction in This Case Because RUSVM is a United States School Operated and Controlled By DVG……………………………………3

           1.    There is a Unity of Interest and Ownership amongst DVG, DMI, and RUSVM……………………………………………………………..4

           2.    There Is No Corporate Veil Between RUSVM and DVG and DMI, Thus No Veil to Pierce………………………………………………5

           3.    RUSVM Assures Current and Prospective Students That They are Protected by Title IX …………..……………..……………………7

           4.    DVG Operates RUSVM Uniformly with Its Other Schools through Employees Based in DVG's Illinois Headquarters…….……………8

           5.    Adherence to The Fiction That RUSVM is Separate from DVG Would Promote Injustice or Inequitable Circumstances…………………………9

       B.    DVG's Direction, Control, and Influence Over RUSVM's Actions Give Rise to DVG's Liability…………………………...…………………………………11

       C.    This Court has Proper Subject Matter Jurisdiction Because Extraterritorial Application of United States Law Applies to All United States Schools……….12

       D.    This Court is the Most Appropriate Forum for a Claim Based on Federal Law…15

           1.    Public Interest Factors Strongly Favor Zara's Choice of Forum………..15

           2.    Private Interest Factors Strongly Favor Illinois Federal Courts……..…..18

           3.    DeVry Has Used This Court to Protect Its Interest in RUSVM………….18

       E.    In the Event the Court Is Inclined to Grant Any Portion of Defendants' Motion, Zara Requests Leave to Amend His Complaint……………….…….19

V.    CONCLUSION……………..……….……..……………………………..20

# TABLE OF AUTHORITIES

*CASES*

*Air Crash Disaster Over Makassar Strait, Sulawesi*, No. 09-CV-3805, 2011 WL 91037, at *8 (N.D. Ill. Jan. 11, 2011)…………………………………………...………………………..16

*Archut v. Ross Univ. Sch. of Veterinary Medicine*, 580 Fed. Appx. 90, (3d Cir. 2014)…….13, 14

*Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)…………………………………………………3

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)……………………………………..2, 3

*Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008)………………………….....……16, 18

*Conley v. Gibson*, 355 U.S. 41 (1957)…………………………………………….……..2, 20

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)………………………….….………………3

*DeVry Inc. v. Int'l Univ. of Nursing,* 638 F. Supp. 2d 902 (N.D. Ill. 2009)………………………18

*E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773 (7th Cir. 2007)……………………………2

*Federal Trade Commission, Plaintiff, v. DeVry Education Group Inc., formerly known as DeVry Inc., a corporation; DeVry University, Inc., a corporation; and DeVry/New York Inc., a corporation, Defendants*, FTC No. 132 3278, Central District of California, January 27, 2016…11

*Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227 (Ill. 2007)………………………………….……11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011)………………………..3

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508…………………………………………..…..15

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008)….5

*King v. Bd. of Control of Mich. Univ.*, 221 F. Supp. 2d 783 (E.D. Mich. 2002)……...…..12, 13

*Phillips v. St. George's Univ.*, 2007 U.S. Dist. LEXIS 84674 (E.D.N.Y. 2007)…………………13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 at 255……………………………….………………15

*Reger Dev't LLC v. National City Bank*, 592 F.3d 759 (7th Cir. 2010)…………………………..2

*Rohler v. TRW, Inc.*, 576 F.2d 1260 (7th Cir. 1978)…………………….……………………20

*Stanard v. Nygren*, 658 F.3d 792, 80 Fed.R.Serv.3d 1082 (7th Cir., 2011)………….………20

iii

Plaintiff Anthony Zara ("Zara"), by and through his undersigned attorney of record, hereby submits this opposition ("Opposition") to the Motion to Dismiss Plaintiff's Claims Against Defendants DeVry Education Group Inc. ("DVG"), DeVry Medical International, Inc. ("DMI, together with DVG, "DeVry"), and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited ("RUSVM," and collectively, with DeVry, "Defendants") and related pleadings [Docket Nos. 20 and 21] (the "Motion"). In support of this Opposition, Zara respectfully represents as follows:

## I.     INTRODUCTION

This case involves legal claims against RUSVM, a division of DVG and/or DMI, arising from decisions made by DeVry's employees working from its offices in the United States against a United States citizen and student at the St. Kitts campus of the Illinois-based school. While incidental events that gave rise to the claims were witnessed by members of the St. Kitts police force and several other U.S. citizens living and working or attending school in St. Kitts, the actions and decisions of Defendants to ignore federal mandates and its own contractual obligations are wholly within the jurisdiction of the United States and, in particular, this Court.

Defendants deliberately and purposefully ignored Defendant Alexa Ferrari's harassment and mistreatment of, and false accusations against, Plaintiff Anthony Zara throughout the 2014-2015 and 2015-2016 school years. Zara was stalked, attacked, and lied to by Defendant Ferrari after he severed emotional and financial ties with her following their break up as a couple. He discussed these abuses with RUSVM employees, who report directly to DVG corporate and are charged to uphold DVG contractual obligations and United States law. Shockingly, however, Defendants ignored Zara's allegations and instead pursed institutional charges against Zara after Ferrari's escalating falsehoods resulted in physical attacks against him. Ultimately, the decisions by Defendants resulted in Zara's expulsion from RUSVM on DVG corporate's advice and direction.

Zara seeks relief from his improper expulsion from RUSVM based on the Defendants' utter disregard for the non-discrimination mandates of Title IX of the Educational Amendments

1

of 1972 and blatant breach of contract, negligence and intentional infliction of emotional distress. Moreover, Zara seeks relief against Defendant Ferrari for interfering with his contract with RUSVM and for intentional infliction of emotional distress. Contrary to Defendants' assertions in the Motion, Zara's claims against them are properly brought in this jurisdiction and under United States law, as RUSVM is not just a tangential subsidiary of DeVry, as Defendants would like the Court to believe, but, instead, is wholly operated and controlled by DVG, which is headquartered in Downers Grove, Illinois.

## II.    STATEMENT OF FACTS

False allegations of sexual and general misconduct made by another RUSVM student and U.S. citizen, Defendant Ferrari ("Ferrari"), against Zara are what brought about the above-captioned case. The factual background giving rise to Zara's claims against Defendants and Ferrari are set forth in the Third Amended Complaint and are incorporated as if fully set forth herein by this reference. A copy of Zara's proposed Third Amended Complaint is attached hereto as ***Exhibit 1*** for the Court's convenience.[1]

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a complaint to be dismissed for failure to state a claim upon which relief can be granted. *E.E.O.C. v. Concentra Health Servs*., 496 F.3d 773, 776 (7th Cir. 2007). To state a claim that withstands such dismissal, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court interpreted that language to impose two easy-to-clear hurdles. *Id*. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Reger Dev't LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Second, its

---

[1]  Contemporaneously with this Opposition, Zara filed a motion for leave to further amend his complaint, which resolves any FRCP 12(b)(2) issues with RUSVM (St. Kitts) Limited, and a copy of his proposed Third Amended Complaint is also attached to that motion [Docket No. 28].

allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a "speculative level." *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14.

The United States Supreme Court has recognized both general and specific personal jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). General jurisdiction is "all-purpose;" it exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 920, (2011)) (internal quotation marks and alteration omitted). The two metrics of general jurisdiction are (1) the corporation's principal place of business, and (2) the state of its incorporation. *Daimler*, at 760. Specific jurisdiction is case-specific and "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, at 919 (internal quotation marks omitted).

## IV. LEGAL ANALYSIS

### A. The Court Has Jurisdiction in This Case Because RUSVM is a United States School Operated and Controlled By DVG.

The whole of Defendants' subject matter and personal jurisdiction arguments, and indeed their argument that Zara's complaint fails to state a claim upon relief can be granted, turn on the principle that RUSVM is an individually owned and operated institution based in St. Kitts, separate and apart from DVG. The Motion meticulously details why Zara's Title IX claim, in particular, is not applicable to either RUSVM or DVG and DMI because the statutory basis for Zara's Title IX claim is inapplicable to non-American universities. This argument is a smokescreen to divert the Court's attention away from DVG's questionable, and potentially fraudulent, behavior in its operation of RUSVM's St. Kitts campus. Moreover, the argument is disingenuous given DVG's previous use of this Court to protect its interests in RUSVM, as discussed more fully below.

The court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th

3

Cir. 2005). Thus, Zara's Second Amended Complaint, and most certainly the Third Amended Complaint, satisfies the requirements to withstand challenge pursuant to Federal Rule of Civil Procedure 12(b)(6), as it provides enough detail and alleges articulable injury giving rise to relief. *See generally Exhibit 1*. Moreover, because the nexus of Defendants' operation and control is situated in Downers Grove, Illinois, of which all parties to this lawsuit were well-aware, this Court has proper personal jurisdiction over Defendants, and a defense to the instant suit under Federal Rule of Civil Procedure 12(b)(2) is inapplicable.

Here, Defendants do not attack Zara's claims for violation of Title IX, breach of contract, negligence, or intentional infliction of emotional distress on substantive grounds whatsoever. *See* Motion. Instead, Defendants DVG, DVI, and RUSVM's Rule 12(b)(6) argument rests on the fiction that DVG is merely the "ultimate parent company" of its wholly owned and operated RUSVM campus, insulated from RUSVM's activities both at the St. Kitts campus and in the United States. *Id*. Defendants have conveniently forgotten that although RUSVM may have begun as a foreign university chartered under the laws of St. Kitts, since its acquisition by DVG in 2003, it is clear that DVG corporate, headquartered in Downers Grove, Illinois, directly runs RUSVM through top-down corporate control of virtually all financial, administrative, compliance, and disciplinary processes. As such, DVG and DMI are absolutely liable for all claims against RUSVM, including Title IX, which defendants are so vigorously trying to avoid.

## 1. There Is a Unity of Interest and Ownership amongst DVG, DMI, and RUSVM.

Almost every theory Defendants try to offer to assert their total innocence in Zara's mistreatment rests on the premise that RUSVM is a wholly-owned, but completely separate institution, merely held by DVG as part of its stock portfolio. This is absolutely false. Since DVG's acquisition of RUSVM over a decade ago, DVG has maintained near total control over every aspect of RUSVM's management. RUSVM is a regular campus of DVG and must be considered both a United States and Illinois educational institution for the purpose of Zara's claims and everywhere else.

4

**2.    There Is No Corporate Veil Between RUSVM and DVG and DMI, Thus No Veil to Pierce.**

Zara's claims against Defendants are sufficiently pled in the Second Amended Complaint for purposes of satisfying the very low threshold of Rule 12(b)(6).  Additionally, however, Zara contends that DVG, DMI, and RUSVM are one and the same corporation.  Defendants posit that "A corporation's veil of limited liability will be pierced only when there is such unity of interest and ownership that the separate personalities of the corporation and the . . . other corporation no longer exist and when adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378-79 (7th Cir. 2008) (citations omitted).  Giving deference to Defendant's choice of governing case law, it is hard to see how RUSVM, DVG, and DMI are not one in the same.

RUSVM is a wholly-controlled corporate operation of DVG's $1.9 billion profit machine held under its DMI branch.  ***Exhibit 2***, pertinent pages of the DeVry Education Group, Inc., Securities and Exchange Commission Annual Report on Form 10-K FY 2015, found at http://investors.devryeducationgroup.com/interactive/lookandfeel/4183694/AR2015/index.html ("2015 10-K"), at pages 65 and 5.  DVG, a decidedly United States for-profit education company that is publicly traded and headquartered in Downers Grove, Illinois, acquired RUSVM and its sister school, Ross University School of Medicine, in 2003 for $310 million.  ***Exhibit 3***, DeVry, Inc., Securities and Exchange Commission Annual Report on Form 8-K March 19, 2003, found at  https://www.sec.gov/Archives/edgar/data/730464/000073046403000005/med.txt  ("2003 8-K"), page 4.  Moreover, DVG routinely touts RUSVM in its annual SEC filings as one of its most profitable arms.  *Exhibit 2,* 2015 10-K, page 3.

DVG, then operating as DeVry, Inc., acknowledged that "Students of Ross University are almost all citizens or permanent residents of the United States," making RUSVM a good fit for United States-based DeVry.  *Exhibit 3,* 2003 8-K, page 3.  In fact, DeVry, Inc.'s filing emphatically touts RUSVM's inclusion into the company's fold, stating:

"We are very excited about the opportunities that this key acquisition presents for DeVry. The acquisition of **Ross University gives the company entry** into an attractive and growing sector of the higher education market - medicine and health sciences," said Dennis J. Keller, DeVry Inc. chairman and co-chief executive officer. "**Diversification of our curricula** in this manner **will help us maintain our leadership position** in career-focused education. Most importantly, Ross brings a strong institutional focus on educational quality, and **its students reflect the passion for excellence and desire to excel that we believe defines all DeVry students**."

*Exhibit 3*, 2003 8-K, page 4 (*emphasis added*).

To date, DVG considers RUSVM part of its educational operations, stating "DeVry Group conducts its educational operations in the United States, the Caribbean Islands (countries of Dominica, St. Kitts and St. Maarten), Brazil, Canada, Europe, the Middle East and the Pacific Rim" instead of classifying RUSVM as its own organization. *Exhibit 2*, 2015 10-K, page 134. This year, a whopping 85% of RUSVM's cash intake came from United States Title IV funding sources. *Id.*, at page 28. RUSVM's exact spending is difficult to track in SEC filings, as DVG lumps all spending across its programs into one Student Services and Administrative Expense amount. *Id*., at page 71.

As telling as they are, DVG's SEC filings do not even begin to illuminate the depth of DVG's control over RUSVM. From the first moment of online contact with the veterinary school, potential students are met with inclusion into the DeVry Education Group's education experience. RUSVM's website, http://veterinary.rossu.edu/, is a United States-based IP address registered to Ross University, School of Veterinary Medicine, 485 U.S. Highway 1 South, Building B, 4th Floor, Iselin, New Jersey 08830 United States, with administrative contact listed as Chris Vaughn at DeVry Education Group, 814 Comerce [sic] Drive, Oakbrook, Illinois 60523 United States. **Exhibit 4**, WHOIS Record, found at https://whois.icann.org/en/lookup?name=Www.rossu.edu. The site's domain registry record was activated on October 27, 2005, last updated on May 18, 2016, and does not expire until July 31, 2017. *Id.* Clearly, RUSVM's technology and primary point of contact online is controlled by DVG corporate here in the United States. It is no surprise then that RUSVM's website links to a privacy statement that is virtually identical to other DVG

6

schools.  ***Exhibit 5***, RUSVM Privacy Policy, found at http://veterinary.rossu.edu/privacy-statement.html; ***Exhibit 6***, DeVry University ("DVU") Privacy Policy, found at http://www.devry.edu/devry-privacy-policy.html; ***Exhibit 7***, Chamberlain College of Nursing ("Chamberlain") Privacy Policy, found at http://www.chamberlain.edu/privacy.  Questions or concerns about RUSVM's privacy policy are directed to Ross University Services, Inc., 630 US Highway 1 North, Brunswick, New Jersey 08902; not to a St. Kitts point of contact.  *Exhibit 5*, RUSVM Privacy Policy.

### 3.  RUSVM Assures Current and Prospective Students That They are Protected by Title IX.

Moreover, anyone who peruses RUSVM's website can freely access several RUSVM publications, most of which are streamlined from program to program and guarantee all DVG students similar rights, responsibilities, and points of contact at DVG corporate.  For example, the RUSVM Policy on Sex and Gender-Based Misconduct Response and Prevention is owned by the Senior Director, Ethics & Compliance Services at DVG and is administered by the Associate Title IX Coordinator.  ***Exhibit 8***, RUSVM Sex and Gender-Based Misconduct Policy, found at http://veterinary.rossu.edu/content/dam/dmi/veterinary/documents/RUSVM_Sex_and_Gender_Based_Misconduct_Response_and_Prevention.pdf.  RUSVM's policy refers viewers to the Title IX Coordinator Ms. Mikhel Kushner, Associate Title IX Coordinator (mkushner@devrygroup.com or 630-515-5440) and Mr. Mark Ewald, Senior Director for Ethics and Compliance Services (mewald@devrygroup.com or 630-353-1437), who are responsible for overseeing compliance with all aspects of this policy and designated to receive and monitor resolution for all Title IX reports at the St. Kitts campus.  *Id*., at page 3.  A review of other DVG other programs; including, DVU and Chamberlain, indicate the same Illinois-based coordinators are responsible for all Title IX complaints across their respective fields of study.  *See **Exhibit 9***, DVU Sex and Gender-Based Misconduct Policy, found at http://www.devry.edu/content/dam/dvu/www_devry_edu/d/DVU-Sexual-Misconduct-Response-and-Prevention.pdf; ***Exhibit 10***, Chamberlain Sex and Gender-Based Misconduct

Policy, found at http://www.chamberlain.edu/docs/default-source/student-consumer-info/sexual-misconduct-and-prevention-policy.pdf?sfvrsn=4. Too, the same reporting system, SpeakUpDeVryGroup, with the same online reporting system found at www.speakupdevrygroup.ethicspoint.com is utilized at every DVG campus to lodge discreet Title IX concerns. *Exhibit 8*, RUSVM Sex and Gender-Based Misconduct Policy, at page 5; *Exhibit 9*, DVU Sex and Gender-Based Misconduct Policy, at page 5; *Exhibit 10*, Chamberlain Sex and Gender-Based Misconduct Policy, at page 3.

In addition, RUSVM's Student Handbook ("Handbook") heavily references United States law. Title IX is referenced over fifteen times alone, and RUSVM expressly submits to that statute's mandates in its Handbook section entitled, "RUSVM Adherence to Title IX Federal Legislation," stating, "In compliance with Title IX of the Education Amendment of 1972, RUSVM does not discriminate on the basis of sex in programs and activities." ***Exhibit 11***, Handbook, page 32.

All programs at DVG schools are subject to the same academic oversight by the Academic Quality Committee of DVG's Board of Directors in order to "support improvement in academic quality by providing oversight of DeVry Group's academic policy and input to the Board and management regarding academic activities." ***Exhibit 12***, DVG Academic Quality Committee Charter Approved August 26, 2015 ("2015 Academic Quality Charter"), found at http://www.devryeducationgroup.com/resources/pdfs/academic_committee_charter.pdf, page 1. Too, all DVG schools are regulated under the same Code of Conduct and Ethics, which "applies to our officers, directors, and full-and part-time colleagues and faculty. It applies across our family of educational institutions, everywhere we operate." ***Exhibit 13***, DVG Conduct Code, found at http://www.devryeducationgroup.com/resources/pdfs/code_of_conduct.pdf, at page 8.

### 4. DVG Operates RUSVM Uniformly with Its Other Schools through Employees Based in DVG's Illinois Headquarters.

RUSVM does not employ upper management on its St. Kitts campus; its highest echelon stops at the Dean of the School. *Exhibit 2*, at page 37. Higher decisions at RUSVM are made by

DVG corporate leaders at the Illinois headquarters, such as RUSVM's President is Steven Riehs, a member of DVG's Senior Leadership team. *Exhibit 2*, at page 56. Riehs works out of DVG's Illinois location, and acts as RUSVM's President; only one of his responsibilities at DVG. RUSVM's Vice President of Civic Affairs and Caribbean Security at DeVry Medical International, Inc., John Kroen, is also employed by DVG corporate offices in Illinois and resides in Mokena, Illinois. ***Exhibit 14***, Kroen LinkedIn Profile, found at https://www.linkedin.com/in/john-kroen-5112b1a. Thus, it is not surprising that counsel for Zara received confirmation from DVG staff that DVG was instrumental in RUSVM's decision to expel Zara based on Title IX principles. *Exhibit 15*, Affidavit of Jason Bach ("Bach Affidavit"), ¶ 2.

### 5. Adherence to The Fiction That RUSVM is Separate from DVG Would Promote Injustice or Inequitable Circumstances.

Given that there is virtually no barrier between DVG and RUSVM, DVG must not be allowed to shield its discriminatory decision to expel RUSVM student Anthony Zara by hiding behind a putative veil of its off-shore campus. It is clear that RUSVM decisions on financial, administrative, compliance, and discipline are made in the United States, and it is run by DVG uniformly with all other DVG higher education campuses. In fact, a review of DVG's public documents, described above, makes clear that RUSVM is nothing more exotic than any other DVG campus governed by the same rules, regulations, bylaws, and legal mandates as all DVG programs. To hold any differently here would perpetuate an injustice upon all current and prospective RUSVM students, as DVG has benefitted tremendously by holding out RUSVM and its sister medical school as American schools subject to United States laws.

Zara was told explicitly at his RUSVM recruiting meeting that "this is a U.S. school that happens to have its campus on a beautiful island." *Exhibit 16*, Declaration of Anthony Zara ("Zara Declaration"), ¶ 3. The recruiting booklet he was given stated that DeVry handles all of the administrative issues at the school. *Id.*, ¶ 4. When applying to RUSVM, Zara sent all his application materials to DMI's New Jersey office as directed and received his acceptance letter from a U.S. address. *Id.*, ¶ 5. Since Zara's problems with local St. Kitts RUSVM administration

began, Illinois-based DVG employees, John Kroen and Steven Riehs, have maintained active involvement in emails related to Zara's expulsion. *Id.*, ¶ 6. Zara believed he was going to a United States-based veterinary school providing academic instruction at its campus on the island of St. Kitts. *Id.*, ¶ 7.

The inextricable links between RUSVM and DVG are so pervasive as to create the semblance to the general public that RUSVM is, indeed, a United States school that just happens to have its campus on a beautiful island. RUSVM must be recognized as the United States school that it is. DVG does nothing to disclaim its operational control over the whole of RUSVM's St. Kitts campus when it serves to benefit the education giant's economic interest, bragging to investors that its RUSVM arm is highly profitable with nary a mention in its annual SEC filings or elsewhere that they *sometimes* wish to distance itself from RUSVM when it best serves their interests. Moreover, DVG's institutional documents liberally cite adherence to the exact law, Title IX, that it seeks to exculpate itself from here. DVG is happy to allow prospective and current RUSVM students believe that it abides by United States Title IX anti-discrimination laws and that such laws apply to its St Kitts campus; at least until it is inconvenient to do so, leaving RUSVM students vulnerable to abuses that they believed they were protected from.

To allow DVG to shed responsibility for its highly profitable RUSVM division and feign lack of control and freedom from United States law only serves to bolster potential fraud claims against the school. By its own admission, DVG recruits RUSVM students almost exclusively from the United States and relies almost exclusively on United States federal financial aid programs for its profits. *Exhibit 2*, at page 28. In this light, RUSVM's message to potential and current students is that by choosing RUSVM they will be protected by United States law when they enroll at RUSVM's St. Kitt's campus. This marketing campaign and recruitment assertions; including recruiter promises that RUSVM is "a U.S. school on a beautiful island," is highly effective at lulling students like Zara – and likely very, very many others – into feeling comfortable enrolling and investing hundreds of thousands of dollars with the DVG school. *Exhibit 16*, Zara Declaration, ¶¶ 3-7. DVG is no stranger to claims of fraud in its recruitment

practices. *Federal Trade Commission, Plaintiff, v. DeVry Education Group Inc., formerly known as DeVry Inc., a corporation; DeVry University, Inc., a corporation; and DeVry/New York Inc., a corporation, Defendants*, FTC No. 132 3278, Central District of California, January 27, 2016. DVG surely could not have intended this result and, therefore, must be willing to concede that RUSVM, as recruiters so often tout, is a United States school that is part of DVG. As such, RUSVM is subject to United States law.

**B.  DVG's Direction, Control, and Influence Over RUSVM's Actions Give Rise To DVG's Liability.**

DVG should be held responsible for claims by Zara under the theory of direct participant liability. Illinois' highest court recognized this theory in *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227 (Ill. 2007), which established that a parent company can be held liable for the actions of its subsidiaries when it directs, controls or influences subsidiary action that leads to plaintiff's injury. In *Forsythe*, the court refused to recognize the parent company, Clark USA, Inc., as a mere holding company that was only connected to Clark Refining as a shareholder. *Id.* Instead, the court recognized that "[w]here there is evidence sufficient to prove that a parent mandated an overall business and budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent could face liability." *Id.* So long as the plaintiff could prove the decision-maker's alleged misconduct occurred while acting in his capacity as an officer of the parent company rather than as an officer of the subsidiary, the parent could be found liable. Here, many RUSVM decisions related to Zara's expulsion came down directly from DVG employees in the United States. DVG personnel in its Florida offices admitted to counsel for Zara that DVG corporate was instrumental in the decision to expel Zara. *Exhibit 15*, Bach Affidavit, ¶ 2.

///

11

**C.**     <u>This Court Has Proper Subject Matter Jurisdiction Because Extraterritorial</u> <u>Application of United States Law Applies to All United States Schools.</u>

Relevant case law regarding the extraterritorial application of Title IX is not as clear as Defendants want this Court to believe. When a United States citizen studying abroad at a United States school suffers a Title IX violation by another United States citizen, United States law does extend extraterritorially. In fact, the nondiscrimination provisions of Title IX of the Education Amendment of 1972 have been construed by a federal district court to apply to American universities operating programs overseas. *See King v. Bd. of Control of Mich. Univ.*, 221 F. Supp. 2d 783, 791 (E.D. Mich. 2002). The court in *King* held that "[e]quality of opportunity in study abroad programs, unquestionably mandated by Title IX, requires extraterritorial application of Title IX." *Id.*, at 791. There, six college students based a Title IX claim against United States-based Eastern Michigan University when, in South Africa as part of a University program, the women faced a series of sexual harassments by other Eastern Michigan University students and faculty. The *King* court reasoned:

> Such detriment, denial of institutional resources and discrimination on the basis of sex, although initiated abroad, clearly happen to students attending universities and colleges in the U.S. that is to persons in the United States. This conclusion is especially fitting here, where the programs were always under the control of Eastern Michigan University in every respect, rather than under the control of any foreign educational facility.

*Id*.

Indeed, failure to properly respond to allegations of sexual assault on a foreign campus should not exculpate a university from its Title IX responsibilities in this arena. As the Department of Education's April 4, 2011, "Dear Colleague" Letter notes: "Title IX protects students in connection with all the academic, educational, extracurricular athletic, and other programs of the school, whether those programs take place in a school's facilities, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere." Assuredly, an offshore campus of a "U.S. school that happens to have its campus on a beautiful island" meets the "Dear Colleague" letter's definition of "another location, or elsewhere."

Defendants avoid citing *King*'s holding in the Motion but are quick to assert the opposite, citing *Phillips v. St. George's Univ.*, 2007 U.S. Dist. LEXIS 84674 (E.D.N.Y. 2007). There, the court refused to apply Title IX to the case involving an American student enrolled at a Grenadian university. Phillips was a student at St. George University, where she was assaulted by a University official in Grenada. But, *Phillips* contrasts with this case on several levels. First, unlike the case here, St. George University is not only a non-American institution, but it also has no ties to a United States family of colleges. It merely had an office in the state of New York. Second, Phillips' sole allegation of Title IX violation was the abusive act by the St. George University employee.

In this case, two key details differ. RUSVM is owned and operated by a United States university through DVG's DMI segment that has a campus on St. Kitts. That puts RUSVM squarely within the scope of the *King* court's line of reasoning. Second, although several of the acts that gave rise to Zara's overall claims occurred in St. Kitts, the ultimate decision of DVG to expel Zara, which is the basis for Zara's Title IX complaint, was in fact made by DVG in the United States. *Exhibit 15*, Bach Affidavit, ¶ 2.

Defendants rely on the unpublished decision in *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV.A. 10-1681 MLC, 2012 WL 5867148 (D.N.J. Nov. 19, 2012), *aff'd*, 580 F. App'x 90 (3d Cir. 2014) (unpublished), to propose that RUSVM's activities and decision-making are distinctly promulgated through its St. Kitts location thereby making it a separate entity from DVG. Motion, at page 9. In *Archut*, a New Jersey district court found that a former student's academic discrimination claim based on the Americans with Disabilities Act and the Rehabilitation Act were outside the scope of traditional United States law, even though the plaintiff pointed to a handful of academic decisions that RUSVM made through its DMI New Jersey office. *Id*. However, RUSVM fails to acknowledge that *Archut* is an unpublished decision providing little guidance to this Court since the facts are so dissimilar to the case here, and, in any event, such decision is not binding on this Court. Even within the Third Circuit, a judge need not accord *Archut* the same precedential treatment as a published opinion. 3 D CIR. R. 28.3(b) ("For each

legal proposition supported by citations in the argument, counsel shall cite to any opposing authority if such authority is binding on this court, e.g., U.S. Supreme Court decisions, published decisions of this court, or, in diversity cases, decisions of the applicable state supreme court.").

However, *assuming arguendo* that *Archut* warrants review, the Title II and ADA claims in that case had a distinctive academic focus, which is within the purview of RUSVM employees on the St. Kitts' campus to negotiate. In fact, that court's holding recognized the island campus' academic accommodation limitations in determining that the proposed disability accommodation violation did not fall under the purview of United States law. *Archut,* at *7.

The opposite holds true here. Zara's Title IX claim is not limited by the physical constraints of St. Kitts' campus. The discrimination in question is related to RUSVM's disciplinary function, which is a role handled almost entirely outside of the St. Kitts campus by DVG's own design. Indeed, RUSVM Vice President of Security and Civic Affairs, John Kroen, is firmly planted at DVG's Illinois corporate office. *Exhibit 14*, Kroen LinkedIn Profile. Moreover, RUSVM's website, Handbook, and publications all point to United States and Illinois decision-making in questions of gender and sex discrimination, directing students to reach out to Ms. Mikhel Kushner, Associate Title IX Coordinator, or Mr. Mark Ewald, Senior Director for Ethics and Compliance Services, both of whom work out of DVG's Illinois corporate office. *See Exhibit 8*, page 3. Indeed, as DVG staff informed counsel for Zara, DVG corporate was instrumental in the decision to expel Zara from RUSVM. *Exhibit 15*, Bach Affidavit, ¶ 2.

Finally, RUSVM is merely one campus for DVG, where students attend to complete only part of their coursework. RUSVM students fulfill the rest of their degree requirements in the United States, and the Handbook explicitly states it applies to all parts of an RUSVM student's academic experience, at any location that the student attends to complete coursework. *Exhibit 11*, Handbook, at page 6. It makes no sense that governance of RUSVM's student protections would differ from location to location as its students move from one DVG campus to another while still enrolled at RUSVM in furtherance of the same degree. What does make sense is that RUSVM is part and parcel of DVG and, as such, is subject to U.S. law.

14

**D.**     **This Court is the Most Appropriate Forum for a Claim Based on Federal Law.**

This Court is the most appropriate forum to govern a claim based on federal law. A bedrock principle of choice of forum doctrine dictates that a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Zara's choice of forum is entitled to deference. Zara is a Florida resident and chose to file the complaint in the United States. Zara is not a foreign plaintiff for *forum non conveniens* purposes so a presumption of convenience exists in favor of his chosen forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Although, as Defendants posit, St. Kitts might be an alternative and adequate forum to dispute most, but not all, of the claims, public interest and private interest factors do not strongly favor Defendants; in fact, Zara's choice of forum strongly favors maintaining the action in this Court.

Just as the whole of Defendants' subject matter and personal jurisdiction arguments erroneously turn on the principle that RUSVM is an individually-owned and operated institution separate and apart from DVG, as discussed at length herein, Defendant's *forum non conveniens* argument erroneously relies on the premise that RUSVM made its own disciplinary decisions giving rise to Zara's claims here and that RUSVM is not subject to federal law. However, DVG is the primary decision maker for RUSVM and was instrumental in RUSVM's expulsion of Zara that gave rise to Zara's claim. *Exhibit 15*, Bach Affidavit, ¶ 2. United States is applicable to the claims at issue in this case. Accordingly, Defendants' arguments fail, and the Court should deny the Motion.

       **1. Public Interest Factors Strongly Favor Zara's Choice of Forum.**

In weighing public interest factors with respect to a motion to dismiss for *forum non conveniens*, courts in this jurisdiction consider "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; [and] unfairness of burdening citizens in an unrelated forum with jury duty." *Clerides v.*

*Boeing Co*., 534 F.3d 623, 628 (7th Cir. 2008). This Court applied the *Clerides* factors in a later case adding that a dispute's wide-ranging effect on a country's industry and government regulatory scheme must be considered along with traditional public considerations in determining the most appropriate forum. *See In re Air Crash Disaster Over Makassar Strait, Sulawesi*, No. 09-CV-3805, 2011 WL 91037, at *8 (N.D. Ill. Jan. 11, 2011). The Court explained in that case,

> The reasons why the Indonesian public has a greater interest in this litigation are obvious. The plane crash giving rise to this litigation occurred on an Indonesian domestic flight, operated by an Indonesian domestic air carrier, carrying predominantly Indonesian citizens. Furthermore, this crash had a wide-ranging impact on the Indonesian airline industry and the Indonesian governmental entities that regulate the industry.

*Id.*

Aligning the facts in this case with the factors considered in *Sulawesi*, the balance tips heavily in favor of this Court maintaining control over Zara's claims. This case involves federal statutory claims against Defendants arising from decisions made by DeVry, headquartered in Illinois and with offices throughout the United States, against a United States citizen and student at the St. Kitts campus of the Illinois-based school. While St. Kitts derives a huge economic benefit from DVG's RUSVM campus and the influx of United States citizens it brings to the country, the instant case involves no members of the St. Kitts public directly. It does, however, involve federal statutes and a for-profit organization situated in the United States, which the United States government has a specific interest in regulating.

All litigants in this case, and even most witnesses, are United States citizens; many employed directly by DVG. Moreover, DVG was instrumental in RUSVM's decision to expel Zara, just as both of RUSVM's Title IX coordinators, RUSVM's own head of security, and RUSVM's President, a senior-level leader making decisions on the school's behalf, are located in Illinois. *See Exhibit 15*, Bach Affidavit, ¶ 2; *see also*, *Exhibit 8*, RUSVM Sex and Gender-Based Misconduct Policy; *Exhibit 14*, Kroen LinkedIn Profile; and *Exhibit 2*, 2015 10-K. Indeed,

16

this connection to Zara's claims makes this Court the most appropriate forum given that the Court must apply United States law.

Finally, DVG's numerous references to United States law and, indeed, Title IX itself, in its contractual documents demonstrate the dispute's close connection with a United States forum. *See Exhibit 8,* RUSVM Sex and Gender-Based Misconduct Policy; *Exhibit 9,* DVU Sex and Gender-Based Misconduct Policy; *Exhibit 10,* Chamberlain Sex and Gender-Based Misconduct Policy; *Exhibit 11,* RUSVM Handbook; and *Exhibit 13,* DVG Conduct Code. DVG must concede that Title IX is applicable to its students on the RUSVM St. Kitts campus. Otherwise, DVG is merely perpetuating a fraud on its current and prospective students who are "almost all citizens or permanent residents of the United States" by promoting a false sense of security that their protections under United States laws follow them to the St. Kitts campus. *Exhibit 3,* 2003 8-K, page 3. This potential fraud stands to have wide-ranging impact on the for-profit education industry and the United States governmental entities that regulate the industry. Considering the United States' very public crackdown of DVG and similar for-profit ventures is currently ongoing, it is no wonder that DVG wishes to keep this particular dispute on the friendly island of St. Kitts. *Exhibit 17*, Federal Trade Commission Press Release dated January 27, 2016, found at https://www.ftc.gov/news-events/press-releases/2016/01/ftc-brings-enforcement-action-against-devry-university; *Exhibit 18*, U.S. Dept. of Education Press Release dated October 30, 2014, found at http://www.ed.gov/news/press-releases/obama-administration-announces-final-rules-protect-students-poor-performing-career-college-programs; *Exhibit 19*, *Washington Post* article dated August 5, 2010, found at http://www.washingtonpost.com/wp-dyn/content/article/2010/08/04/AR2010080403816.html. Doing so, however, would allow another for-profit giant to continue to flout United States education regulations and to hemorrhage taxpayers' Title IV and Title IX funds with zero accountability whatsoever.

///

///

17

### 2. Private Interest Factors Strongly Favor Illinois Federal Courts.

Although DVG's personal interests clearly favor a St. Kitts lawsuit, actual private interests of all parties indicate the Northern District Court of Illinois is the most appropriate forum for this dispute. These factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case expeditious and inexpensive." *See Clerides*, 534 F.3d at 628. Defendants only assertion on this factor is that "*every witness* even arguably relevant to this case appears to live in St. Kitts." This is simply untrue. Several DVG witness, including the DVG employee who made the decision to expel Zara, work and reside in Illinois.

### 3. DeVry Has Used This Court to Protect Its Interest in RUSVM.

Moreover, access to Illinois courts have not proven to be a challenge for DVG, DMI, and RUSVM litigants in the past. In fact, DVG and RUSVM have conveniently availed themselves to this court when it benefitted them. DVG willingly chose to use Illinois courts as a battleground to wage wars against patent infringements by another St. Kitts private medical school. *DeVry Inc. v. Int'l Univ. of Nursing*, 638 F. Supp. 2d 902, 906 (N.D. Ill. 2009). As the plaintiff, DVG filed its complaint in the Northern District of Illinois in order to protect its RUSVM campus against Robert Ross's International University of Nursing for incorporating the former's trademarked Ross name into the latter's large, affixed campus signage and promotional material. *Id*. There, both DVG's own RUSVM campus and the defendant were subject to St. Kitts forum, the buildings and signage at issue were located on the island, and several of examples of confusion DVG used in that suit happened in St. Kitts. *Id*. Moreover, a St. Kitts court could have provided some potential avenue for redress, as St. Kitts law would have allowed for DVG to both file trademark rights and enforce those rights on the campus where the vast bulk of the evidence was situated. *Id*. Nonetheless, DVG decided that the Northern District of Illinois was the jurisdiction of most convenient forum.

DVG wants to enjoy the profits RUSVM brings in while denying exposure to liability arising from its operation and control of that school; as when it recruits students with the lure of "a U.S. school that happens to have its campus on a beautiful island," but later alleges RUSVM is a wholly self-sufficient foreign institution. Likewise, Defendants dither between their own preferences in choosing an appropriate forum here. This Court should not allow DVG and RUSVM to *sometimes* avail itself of the advantages and convenience of the United States legal system and *sometimes* feign total obliviousness and hardship if forced to submit to that same legal system. If it was not too vexing and oppressive for DVG to litigate a claim in the Northern District of Illinois when the events giving rise to that suit occurred solely on the island of St. Kitts, the evidence was firmly planted in St. Kitts, and the matter involved foreign parties, then it cannot be so terribly oppressive now. For this reason, as well as the factors examined herein, the balance tips heavily in the favor of maintaining Zara's choice of forum.

As discussed above, Zara's claims against Defendants withstand Defendant's contentions of lack of subject matter and personal jurisdiction, as all parties are quite aware that RUSVM is a corporate-controlled division of DVG, headquartered in Downers Grove, Illinois, U.S.A. In fact, in direct contradiction to the allegations made in the Motion, DVG has taken substantial measures to hold RUSVM out as "a U.S. school that happens to have its campus on a beautiful island." The "home" to that U.S. school's campus is DVG's corporate headquarters in Illinois. As such, this Court has personal jurisdiction over the Defendants as well. The claims in this case are properly situated against an Illinois-based school subject to both federal law and Illinois law, and it is appropriate that this Court refuse to dismiss the claims on grounds of *forum non conveniens*, as a United States federal court is the most appropriate forum to litigate issues of United States law involving all United States defendants.

**E.**     **In the Event the Court Is Inclined to Grant Any Portion of Defendants' Motion, Zara Requests Leave to Amend His Complaint.**

While Federal Rule of Civil Procedure 15 places leave to amend within the sound discretion of the trial court, a court must remain guided by "the underlying purpose of Rule 15 . .

. to facilitate decision on the merits, rather than on the pleadings or technicalities." *See Conley v. Gibson*, 355 U.S. 41, 48 (1957). Where there is there is an absence of bad faith, undue delay, dilatory motives or prejudice to the non-moving party and the proposed amendment is not futile, leave should generally be granted. *Stanard v. Nygren*, 658 F.3d 792, 80 Fed.R.Serv.3d 1082 (7th Cir., 2011). Leave to amend should be liberally granted, and the Seventh Circuit Court of Appeals has found that the trial court abused its discretion particularly when it could not be said to a certainty that the plaintiff cannot state a claim upon which relief can be granted. *See Rohler v. TRW, Inc.*, 576 F.2d 1260 (7th Cir. 1978). The factual history of events giving rise to the instant case are extensive. In the event this Court were to find any of his causes of action deficient, Zara respectfully requests leave to amend his complaint.

## V. CONCLUSION

WHEREFORE, Zara respectfully requests that the Court enter an order sustaining this Opposition, denying the Motion in its entirety and granting such other relief as may be deemed just and proper.

DATED this 23rd day of June, 2016.

Respectfully submitted,

**THE BACH LAW FIRM, LLC**

By  */s/ Jason J. Bach*
    Jason J. Bach
    7881 West Charleston Blvd., Suite 165
    Las Vegas, Nevada 89117
    Telephone: (702) 925-8787
    Facsimile: (702) 925-8788
    Email: jbach@bachlawfirm.com
    *Attorneys for Plaintiff Anthony Zara*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will send electronic notification of such filing to:

> Brian M. Stolzenbach, Esq.
> Katherine F. Mendez, Esq.
> SEYFARTH SHAW LLP
> 131 South Dearborn Street
> Suite 2400
> Chicago, Illinois 60603
> (312) 460-5000
> bstolzenbach@seyfarth.com
> kmendez@seyfarth.com
> *Attorneys for Defendants DeVry Education Group Inc.,*
> *DeVry Medical International, Inc., and Ross University*
> *School of Medicine, School of Veterinary Medicine (St. Kitts) Limited*

> Scott A. Schaefers, Esq.
> BROTSCHUL POTTS LLC
> 30 N. LaSalle Street, Suite 1402
> Chicago, Illinois 60602
> (312) 268-6795
> sschaefers@brotschulpotts.com
> *Attorney for Alexa Ferrari*


> _/s/ Jason J. Bach_____
> Jason J. Bach