IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY ZARA, )<br>)<br>    Plaintiff, )<br>)<br>      v. )<br>)<br>DEVRY EDUCATION GROUP, INC.; )<br>DEVRY MEDICAL INTERNATIONAL, )<br>INC.; ROSS UNIVERSITY SCHOOL OF )<br>MEDICINE, SCHOOL OF VETERINARY )<br>MEDICINE (ST. KITTS) LIMITED; and )<br>ALEXA FERRARI )<br>)<br>    Defendants. ) | Case No. 1:16-cv-05156<br><br>Honorable Judge Andrea R. Wood<br>Magistrate Judge Sidney Schenkier |

**REPLY MEMORANDUM IN SUPPORT OF THE MOTION
TO DISMISS PLAINTIFF'S CLAIMS AGAINST DEFENDANTS DEVRY
EDUCATION GROUP INC., DEVRY MEDICAL INTERNATIONAL, INC.,
AND ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF
VETERINARY MEDICINE (ST. KITTS) LIMITED**

### Introduction

Plaintiff's response to Defendants' motion defends against imagined arguments that Defendants never set forth as bases for the dismissal of Plaintiff's claims. These misplaced arguments have confused the parties' dispute. Defendants are not claiming that this Court has no subject matter jurisdiction over Plaintiff's claims and are not claiming that Title IX has no application to RUSVM whatsoever. Title IX does apply to RUSVM's operations *in the United States*.

Instead, Plaintiff's claims should be dismissed for the following reasons:

- Plaintiff has no basis for claiming that liability for his claims against RUSVM can be imputed to DVG or DMI or that this Court has personal jurisdiction over RUSVM by piercing the corporate veil.

27827013v.3

- Title IX does not apply to conduct occurring in St. Kitts. Title IX is an American law governing conduct *in America.* As a result, Plaintiff's invocation of Title IX fails to state a cognizable legal claim.

- This case should be litigated in St. Kitts, as it involves legal claims made by a man living in St. Kitts against a St. Kitts school arising solely from events that took place in St. Kitts, which were witnessed by members of the St. Kitts police force and several other witnesses living and working or attending school in St. Kitts.

## I. Plaintiff does not plausibly allege that DVG, DMI, and RUSVM are alter egos.

In his opposition brief, Plaintiff attempts to argue that Defendants are not three separate corporations, but in reality one -- i.e., alter egos of one another. He makes this argument to try to salvage his failure to allege any facts in any of his four successive complaints that could possibly give rise to personal jurisdiction over RUSVM or any liability for RUSVM's corporate parents, DVG and DMI. Not only does Plaintiff's Third Amended Complaint (his latest, Dkt. No. 28) fail to allege alter ego status among the corporate Defendants (it merely alleges a parent-subsidiary relationship), but even Plaintiff's lengthy brief and numerous exhibits do not provide the Court with a single plausible basis for concluding that Defendants are alter egos. As a result, the Court has no personal jurisdiction over RUSVM, and Plaintiff has not stated a valid claim against DVG or DMI based on an alter ego theory.

"Piercing the corporate veil is not favored and in general, courts are reluctant to do so . . . Accordingly, the party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a 'dummy or sham' for another person or entity." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 378-79 (7th Cir. 2008); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (disregard of the corporate entity is appropriate only in exceptional circumstances).[1]

---

[1] In a case pending in Illinois, "[w]hen a party seeks to pierce the corporate veil to establish personal jurisdiction, Illinois law governs the analysis." *See Nathan v. Morgan Stanley*

2

27827013v.3

A corporation's veil can be pierced only when there is "such a unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist and when adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *See Judson*, 529 F.3d at 378-79; *see also Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (to pierce corporate veil under Delaware law, plaintiff must establish that separate corporations acted as a single economic entity and that "an overall element of injustice or unfairness is present."). "The requisite element of fraud . . . must come from an inequitable use of the corporate form itself as a sham, and not from [Plaintiff's] underlying claim." *Marvani*, 900 F. Supp. 2d at 392.

In this regard, courts look to the following factors to determine whether there is sufficient unity of interest to justify disregarding the corporate form: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) comingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant shareholders. *See Judson*, 529 F.3d at 379; *Trevino*, 583 F. Supp. 2d at 528-29.

The gravamen of Plaintiff's response to Defendants' motion to dismiss is that DVG maintains "near total control over every aspect of RUSVM's management." (Pl. Resp. Brief, p.

---

*Renewable Development Fund, LLC*, Case No. 11-cv-2231, 2012 WL 1886440, *7 (N.D. Ill. May 22, 2012). On the other hand, when seeking to establish a corporate defendant's liability for another corporate defendant's actions, Illinois's choice of law rule for veil-piercing is that "the law of the state of incorporation governs such claims." *Judson*, 529 F.3d at 378-79. DVG is a Delaware corporation. (Exhibit A, Audrey Kaplan Declaration ¶ 2.)

3

27827013v.3

4.) This strong allegation does not find a whit of support in Plaintiff's brief. More important, Plaintiff does not even address the necessary veil-piercing factors. Nor can he, because he has no evidence that any of the factors are present in this case. In reality, Plaintiff alleges nothing more than that DVG, DMI, and RUSVM have an ordinary parent-subsidiary relationship.

In this regard, it is well settled that Illinois courts do not have personal jurisdiction over a non-resident parent or subsidiary of a non-Illinois company, even where there is some shared management or administration between them, unless the parent exercises an unusually high degree of control over the subsidiary. *See Abelesz v. OTP Bank*, 692 F.3d 638, 658-59 (7th Cir. 2012) (reversing district court's finding of personal jurisdiction over foreign parent company, even though it shared directors and officers with Illinois subsidiary); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023-24 (7th Cir. 2009) (affirming district court's dismissal of parent company for lack of personal jurisdiction where parent company owned majority of stock of Illinois subsidiary, yet maintained separate existence); *New Process Steel, L.P. v. PH GR, Inc.*, 107 Fed.Appx. 641, 642-43 (7th Cir. 2004) (affirming dismissal of Michigan subsidiary of Illinois parent company for lack of evidence that parent was "agent" of subsidiary); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (affirming dismissal of parent company; "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary"); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998) (affirming dismissal of parent company due to separate existence with subsidiary); *Corporate Safe Specialists, Inc. v. Tidel Techs., Inc.*, No. 05-cv-3421, 2005 WL 1705826, * 4 (N.D. Ill. July 15, 2005) (Moran, J.)

(rejecting plaintiff's alter ego theory asserted against parent and subsidiary, even though they shared same CEO and filed consolidated financial statements and tax returns); *Old Orchard Urban L.P. v. Harry Rosen, Inc.*, 389 Ill.App.3d 58, 66 (1st Dist. 2009) (parent company was not subject to personal jurisdiction in Illinois; "the critical question is whether the Illinois subsidiary exists for no purpose other than conducting the business of its parent"); *Palen v. Daewoo Motor Co.*, 358 Ill.App.3d 649, 661 (1st Dist. 2005) (parent companies necessarily control, direct, and supervise subsidiaries to some extent, but are not subject to personal jurisdiction solely because of such control, direction and supervision).

Plaintiff advances arguments that have no bearing on the applicable legal analysis. Plaintiff repeatedly points to DVG's profitability and notes that DVG "acquired RUSVM in 2003 for $310 million." (Pl. Resp. Brief, p. 5.) This says nothing about whether DVG's corporate veil should be pierced. Plaintiff goes one step further and states that RUSVM itself is "highly profitable." (*Id.* at 10.) This fact actually contradicts Plaintiff's alter ego argument, as one of the factors courts consider in piercing the corporate veil is whether the subsidiary is undercapitalized. *See Judson*, 529 F.3d at 379 (in a piercing-the-veil analysis, a court will find a corporation to be undercapitalized only when it "has so little money that it could not and did not actually operate its nominal business as its own.").

Plaintiff also claims that RUSVM is "a wholly-controlled corporate operation of DVG . . . held under its DMI branch." (Pl. Resp. Brief, p. 5.) For support, Plaintiff points to DVG's 2015 Form 10-K and 2003 Form 8-K submitted to the Securities and Exchange Commission. (*Id.*) These documents evidence nothing more than a parent-subsidiary relationship between DVG and RUSVM (to say nothing of the fact that a Form 8-K from 2003 is irrelevant to DVG's corporate structure more than a decade later). (*See* Pl. Resp. Brief, Exhs 2-3.) The mere fact that

5

DVG owns RUSVM does not compel the conclusion that DVG's corporate veil should be pierced. *See, e.g., Old Orchard*, 904 N.E.2d at 1059.

Plaintiff next provides multiple examples of RUSVM's alleged contacts with the United States. In Plaintiff's opposition brief at pages 5 and 10, he notes that many RUSVM students are United States citizens and observes that questions related to RUSVM's privacy policy are directed to a corporate entity in New Jersey. Plaintiff also submitted an affidavit alleging RUSVM has United States contacts. (*See* Pl. Resp. Brief, Exh. 16 ¶¶ 3-5, 7.) None of these allegations is remotely related to the question of whether DVG's corporate veil should be pierced. *See Judson*, 529 F.3d at 379.

Plaintiff also argues that RUSVM's privacy policies are "virtually identical" to privacy policies of different schools operated by DVG subsidiaries. (*Id.* at 6-7.) Plaintiff does not even allege that RUSVM and DVG use the *same* privacy policy. Regardless, this is not sufficient to pierce DVG's corporate veil. *See Old Orchard*, 904 N.E.2d at 1056, 1062 (rejecting the plaintiff's argument that a corporate defendant's veil should be pierced because its subsidiary distributed employment documents to its employees on the parent company's letterhead and which referred to the parent company's employment policies, goals and standards).

Finally, Plaintiff alleges that some administrative support functions are provided to RUSVM by DVG (a Title IX Coordinator, a Director of Ethics, a reporting structure for lodging Title IX concerns, a Code of Conduct and Ethics, and an Academic Quality Committee) (Pl. Resp. Brief, pp. 7-8) and that the administrative contact for RUSVM's website address is listed as Chris Vaughn at DVG. (*Id.* at 6.)

In short, Plaintiff asserts that DVG provides some administrative functions for RUSVM. One company's provision of administrative services to another does not provide a basis for

27827013v.3

piercing the corporate veil. The plaintiff in *Central States* argued that the court had jurisdiction over a parent company because the parent company shared some administrative services with its subsidiary. 230 F.3d at 945. The Seventh Circuit disagreed, holding that: "We adopt the rule that a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction." *Id.* The court went on to explain that "Parent corporations regularly provide certain services to their subsidiaries. Such parents do not expect that performing these activities may subject them to liability because of the actions of the subsidiaries." *Id; see also Papa v. Katy*, 166 F.3d 937, 939, 943 (7th Cir. 1999) (declining to pierce the corporate veil of parent company even though the parent and the subsidiary had centralized payroll, benefits, and computer operations, and that membership of the boards of directors overlapped).[2]

Additionally, Plaintiff has not established (or even alleged) that DVG's corporate structure is fraudulent (much less has he pled fraud with specificity in his complaint) or that there is injustice or inequity in the Defendants' corporate form. Plaintiff dances around assertions of fraud in his brief (Pl. Resp. Brief, pp. 10-11), but never actually makes them. At most, he asserts that RUSVM touts its connections to the United States in various ways (hardly a fraud). Regardless, these assertions do *not* claim that fraud, injustice, or inequity exists *in the corporate*

---

[2] Plaintiff also claims that "RUSVM's" Vice President of Civic Affairs and Caribbean Security John Kroen is employed by DVG and lives in Illinois. (Pl. Resp. Brief, p. 9.) But the "evidence" he cites (Kroen's LinkedIn page) says Kroen is Vice President, Civic Affairs and Carribbean Security at *DMI*. (*See id.* at Exh. 14.) Similarly, Plaintiff claims that "RUSVM's President is Steven Riehs, a member of DVG's senior leadership team." (Pl. Resp. Brief, p. 9.) Again, the exhibit Plaintiff cites does not support his allegation. (*See id*, Exh. 2, p. 56.) In fact, Plaintiff's Exhibit 2 at page 56 actually states that Riehs is President of DMI, *not* RUSVM. Regardless, a couple of shared officers is not enough to support piercing DVG's or DMI's corporate veil. *See Judson*, 529 F.3d at 381 (having common officers "is insufficient to justify disregarding the corporate form because it is a common business practice that exists in most parent and subsidiary relationships.").

7

*structure itself*. Therefore, this argument does nothing to support Plaintiff's claim that DVG's corporate veil should be pierced. *See Marnavi*, 900 F. Supp. 2d at 392 ("the requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.").

Plaintiff cannot establish that DVG's or DMI's corporate veil should be pierced to impute liability to DVG or DMI for RUSVM's actions or for this Court to assert personal jurisdiction over RUSVM. Plaintiff's Complaint against Defendants should be dismissed for lack of personal jurisdiction over RUSVM and lack of sufficient allegations that DVG or DMI can be held liable for RUSVM's actions based on a veil-piercing theory.

## II. Plaintiff's Complaint Has Not Alleged A Plausible Claim That DVG Expelled Him.

In his opposition brief, Plaintiff asserts that DVG itself (not RUSVM) actually made the decision to expel him. (Pl. Resp. Brief, p. 13.) This is different from the alter ego theory designed to make DVG responsible for RUSVM's actions or to provide the Court with personal jurisdiction over RUSVM; rather, it is a theory that DVG itself is actually the "bad" actor here. The first problem with this argument is the fact that it is nowhere alleged in Plaintiff's Third Amended Complaint (or any prior complaint). (*See* Dkt. Nos. 1, 3, 15, 28.) The reason it is absent from the pleading is Plaintiff's lack of any factual basis for alleging it. As explained in Jeff Fazio's declaration previously submitted in support of Defendants' motion to dismiss on *forum non conveniens* grounds, the expulsion decision was made by a Conduct Panel in St. Kitts comprised of Fazio and several RUSVM faculty members. (*See* Dkt. No. 21, Ex. B, ¶ 7.)

Plaintiff ignores this detailed sworn testimony from an individual with personal knowledge in favor of his own counsel's vague affidavit stating that an unidentified in-house attorney at DVG told him that DVG's "office in the United States" (whoever that is) was in some

8

fashion "involved in" the decision to expel Plaintiff from school. (Pl. Resp. Brief, Exh. 15, ¶ 2.) In fact, DVG's in-house counsel Audrey Kaplan does recall that in mid-May 2016, after this lawsuit was filed, she spoke with Plaintiff's counsel. (Kaplan Declaration ¶ 3.) They have negotiated the resolution of other student claims in the past, and Kaplan engaged in this telephone conversation to see if this lawsuit also could be amicably resolved. (*Id*. at ¶ 4.) Accordingly, at the outset of their conversation, Kaplan told Plaintiff's counsel that the discussion was a protected settlement discussion. (*Id*. at ¶ 5.) Regardless, at no time during their call did Kaplan say that DVG made the decision to expel Plaintiff. (*Id*. at ¶ 6.)

As an initial matter, this Court should not even consider the conversation between Kaplan and Plaintiff's counsel because it is an inadmissible settlement communication under Federal Rule of Civil Procedure 408. Even aside from this, Plaintiff's counsel's declaration is too vague and lacking in foundation to overcome Fazio's otherwise uncontroverted testimony. Plaintiff has not alleged a single fact to establish that anyone at DVG made the decision to expel him. Nor has he even identified any person at DVG whom he claims made the decision. Plaintiff counsel's affidavit provides no basis for permitting Plaintiff to sue DVG for his expulsion, especially given that his Third Amended Complaint is devoid of any allegation that DVG employees actually expelled him.

### III.     Title IX Does Not Apply In St. Kitts.

Even aside from any jurisdictional deficiencies or lack of evidence that DVG may be held liable for Plaintiff's expulsion, it is beyond question that the reach of Title IX does not extend beyond the borders of the United States. This is not a subject matter jurisdiction question. *See Morrison v. Natl. Australia Bank Ltd.*, 561 U.S. 247, 253-54 (2010). Nor is it a question of whether Title IX ever applies to the relationship between RUSVM and its students. After all, as Plaintiff notes in his own brief, many RUSVM students spend the clinical portion of their

9

education in the United States. (Pl. Resp. Brief, p. 14.) Rather, the issue is simply that Title IX is an American statute that does not govern events in St. Kitts. It also does not matter that RUSVM says Title IX applies to the school. As noted, it does in some contexts, but absent a finding of express Congressional intent to the contrary, the statute does not apply in St. Kitts. It should go without saying that no statement by a private company can override Congress and extend the reach of an American statute beyond the country's borders.

It is a longstanding principle that American law applies only within the United States unless Congress clearly evidences intent for the law to apply extraterritorially. The Supreme Court and the Seventh Circuit have repeatedly upheld this principle. *See EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991); *Small v. United States*, 544 U.S. 385, 388-89 (2005); *Morrison*, 561 U.S. at 255; *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 690 (7th Cir. 2008). During the briefing of this matter, the Supreme Court again confirmed this long-established precedent in *European Community v. RJR Nabisco Inc.*, ___ S.Ct. ____, 2016 WL 3369423, *7 (June 20, 2016), stating that "[i]t is a basic premise of our legal system that, in general, United States law governs domestically but does not rule the world." Further, "[w]hen a statue gives no clear indication of an extraterritorial application, it has none." *Id.* (holding that RICO's private right of action does not apply extraterritorially).

In the face of controlling Supreme Court and Seventh Circuit opinions, Plaintiff relies on one case from the Eastern District of Michigan and a Department of Education "Dear Colleague" Letter to support his position that Title IX applies extraterritorially. Plaintiff's reliance on *King v. Bd. of Control of Mich. Univ.*, 221 F. Supp. 2d 783 (E.D. Mich. 2002) (Pl. Resp. Brief pp. 12-13) is misplaced. In *King*, the district court relied on *Foley Bros., Inc. v. Filardo*, 336 U.S. 281 (1949), a case preceding the Supreme Court's decision in *Morrison*. *See King*, 221 F. Supp. 2d

at 787. In *Foley*, the Supreme Court suggested that to determine whether a statute could apply extraterritorially, a court must "ascertain unexpressed congressional intent." *Foley*, 336 U.S. at 285.

In *Morrison*, the Supreme Court "explicitly disavowed a line of cases . . . that described the extraterritoriality inquiry as seeking to 'ascertain' unarticulated Congressional intent from sources outside the text of the statute." *See Archut v. Ross Univ. Sch. of Veterinary Med.*, Case No. 10-cv-1681, 2012 WL 5867148, *6 (D.N.J. Nov. 19, 2012), *aff'd,* 580 Fed. Appx. 90 (3d Cir. 2014) (citing 29 U.S.C. § 794) (unpublished); *citing Morrison*, 561 U.S. at 255-56. The court in *King* (which was also decided before *Morrison*) specifically relied on this very reasoning that was later rejected by the Supreme Court in *Morrison*. Because it is a district court opinion that no longer comports with Supreme Court precedent, this Court should ignore Plaintiff's single source of legal authority.

As for Plaintiff's reliance on the Department of Education's "Dear Colleague" Letter (Pl. Resp. Brief, p. 12), this letter cannot override Congressional intent or Supreme Court precedent. At any rate, the letter does not say that Title IX applies outside the United States. Plaintiff's reliance on the letter as somehow establishing unarticulated Congressional intent from a source outside the text of Title IX is exactly the kind of reasoning the Supreme Court in *Morrison* rejected. Because Title IX does not apply to Plaintiff's expulsion in St. Kitts, his Title IX claim should be dismissed.

## IV. Plaintiff's Complaint Should Be Dismissed Based On *Forum Non Conveniens.*

Whether Defendants are alter egos or not and whether Title IX applies or not, this case has nothing to do with the State of Illinois. No relevant events happened in Illinois, no witnesses live in Illinois, and Illinois law does not govern any of Plaintiff's substantive claims. Indeed,

there is no basis for litigating this case in America, much less in Illinois. Accordingly, this case should be dismissed on *forum non conveniens* grounds.

This was the conclusion the district court and the Third Circuit reached in a prior case involving RUSVM. *See Archut v. Ross University Sch. of Veterinary Med.*, Case No. 10-cv-1681, 2013 WL 5913675 (D.N.J. Oct. 31, 2013); *aff'd,* 580 Fed. Appx. 90. There, the plaintiff sued RUSVM and DVG (then known as DeVry Inc.) in federal court in New Jersey, where her lawyer was licensed to practice law.[3] *See id.* at *1. In the first of two *Archut* decisions, the district court dismissed the plaintiff's claims under Title III of the Americans With Disabilities Act, the Rehabilitation Act, and the New Jersey Law Against Discrimination because none of those laws applies in St. Kitts. *See id.* at *13. In a subsequent decision, the court dismissed the plaintiff's remaining breach of contract claim on *forum non conveniens* grounds because neither the plaintiff nor any other material witness was in New Jersey, most of the witnesses were in St. Kitts, and St. Kitts law was likely to govern any contractual claim based on RUSVM's student handbook. *See Archut*, 2013 WL 5913675 at *4-15.

The argument for sending this case to St. Kitts is even stronger than the argument was in *Archut*, for it appears that *all* the material witnesses (including Plaintiff) are still in St. Kitts. If Plaintiff is anywhere else, he is in Florida (closer to St. Kitts than Ms. Archut was, given that she was attending school at West Virginia University, *see id*. at 9). Furthermore, although the argument for a *forum non conveniens* dismissal here is even more compelling when one considers the absence of any cognizable federal claim under Title IX, even if that statute were somehow applicable to events in St. Kitts, it still would make no sense to litigate this case anywhere but St. Kitts. If Title IX does somehow apply to events in St. Kitts, then surely the St.

---

[3] Similarly, the instant case has landed in this Court only because Plaintiff's counsel is licensed in Illinois and a member of this Court's bar.

12

27827013v.3

Kitts court system is capable of deciding this dispute (and should have an interest in doing so). Even if Title IX applies, then some court is going to have to apply both American law (Title IX) and St. Kitts law (Plaintiff's breach of contract and other common law claims). Given that all the witnesses are in St. Kitts and all the relevant events occurred in St. Kitts, and nothing in this case is related to Illinois, that court should be a St. Kitts court.

Even aside from this common sense reasoning, Plaintiff's opposition brief falls short of providing any legal basis for litigating this case in Illinois. Plaintiff does not dispute that St. Kitts is an adequate alternate forum for this lawsuit. (Pl. Resp. Brief, p. 15.) Instead he argues that public and private interests favor litigation in the Northern District of Illinois. (*Id.* at 15-18.) He is wrong.

Public interest factors include "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; [and] unfairness of burdening citizens in an unrelated forum with jury duty." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Despite citing these factors in his opposition brief, Plaintiff does not apply any of them to the facts of this case. Instead, relying heavily on his conclusory and demonstrably incorrect assertion that this case arises from "decisions made by DeVry," Plaintiff argues that public interest favors litigation of this case in this Court because: (i) DVG is headquartered in Illinois; (ii) Plaintiff is a United States citizen (although he is not a citizen of Illinois); (iii) this case supposedly involves no members of "the St. Kitts public" (even though the St. Kitts police officers who arrested Plaintiff and every other witness, in fact, lives in St. Kitts); and (iv) the case involves a "for profit organization situated in the United States" (perhaps

13

forgetting the admission in his Second Amended Complaint that RUSVM is a St. Kitts corporation located in St. Kitts). (Pl. Resp. Brief, pp. 16-17.)

A more accurate application of the relevant factors establishes that: (a) St. Kitts has a "strong local interest" in resolving alleged disputes arising from actions that took place entirely in St. Kitts, between a St. Kitts corporation and a student residing in St. Kitts, and involving multiple witnesses residing in St. Kitts; (b) St. Kitts law governs Plaintiff's common law claims, while Illinois law is irrelevant; (c) litigating in St. Kitts would avoid any potential for conflicts of law; (d) litigating in St. Kitts would avoid the difficulty of this Court having to apply St. Kitts law; and (e) it is fundamentally unfair to burden Illinois's citizens with attending jury duty on this matter because Illinois has no connection to the dispute whatsoever.[4]

The private interest factors in a *forum non conveniens* analysis include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case expeditious and inexpensive." *See Clerides*, 534 F.3d at 628.

Here, Plaintiff's entire argument is that "several DVG witness [*sic*], including the DVG employee who made the decision to expel [Plaintiff ], work and reside in Illinois." (Pl. Resp. Brief, p. 18.) Yet Plaintiff does not identify any of these supposed witnesses. Contrary to these assertions, a panel of RUSVM faculty members in St. Kitts, along with Jeff Fazio (also in St. Kitts) made the decision to expel Plaintiff. (Def. Brief at Ex. B ¶ 7.) Every *actual* witness to the

---

[4] Plaintiff also claims that "most witnesses are United States citizens" (he does not suggest that any are Illinois citizens). (Pl. Resp. Brief, p. 16.) This argument suggests that whenever a United States citizen is involved in a legal dispute in a foreign country, the appropriate forum for the dispute is in the United States. Plaintiff offers no legal authority for this argument and the Court should disregard it.

14

events leading to Plaintiff's claims also lives in St. Kitts (not Illinois). If this case were litigated in Illinois, RUSVM would have no way to compel all these witnesses (including St. Kitts police officers) to attend a trial.

In sum, the public and private interest factors squarely support this case being heard in St. Kitts--even if Title IX were to apply, and even if DVG's corporate veil were pierced. This Court should not require a St. Kitts company to defend itself in Illinois when the pertinent legal questions arise under St. Kitts law, all the pertinent events took place in St. Kitts, every single possible defense and third-party witness lives in St. Kitts, and not even Plaintiff has any connection to Illinois.

## Conclusion

For the reasons stated herein, Defendants DeVry Education Group Inc., DeVry Medical International, Inc., and Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited respectfully request that the Court dismiss all Plaintiff's claims against them in this lawsuit.

**DATED: July 1, 2016**  Respectfully submitted,

DEVRY EDUCATION GROUP INC., DEVRY MEDICAL INTERNATIONAL, INC., and ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LIMITED.

By   *s/ Katherine F. Mendez*

Brian M. Stolzenbach
Katherine F. Mendez
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
(312) 460-5000
bstolzenbach@seyfarth.com
kmendez@seyfarth.com

27827013v.3

## **CERTIFICATE OF SERVICE**

I do hereby certify that on July 1, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Court's CM/ECF System, which will send electronic notification of such filing to the following:

>Jason J. Bach
>The Bach Law Firm, LLC
>7881 W. Charleston Blvd.
>Suite 165
>Las Vegas, Nevada 89117
>(702) 925-8787
>jbach@bachlawfirm.com

>*s/ Katherine F. Mendez*
>Katherine F. Mendez

27827013v.3