IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY ZARA, Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-5156 |
| ) | |
| DEVRY EDUCATION GROUP, INC.; ) | Judge Andrea R. Wood |
| DEVRY MEDICAL INTERNATIONAL, INC.; ) | |
| ROSS UNIVERSITY SCHOOL OF MEDICINE, ) | |
| SCHOOL OF VETERINARY MEDICINE (ST. KITTS) LTD.; ) | |
| and ALEXA FERRARI, Defendants. ) | |

**DEFENDANT ALEXA FERRARI'S REPLY
IN SUPPORT OF HER FED. R. CIV. P. RULE 12(b)(2) MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

In his response, plaintiff relied entirely on an unalleged theory that RUSVM on St. Kitts island was the alter ego of DVG in Illinois, and that some unidentified "contract" between him and RUSVM was therefore an Illinois contract. Plaintiff then concluded that this Court has jurisdiction over Ms. Ferrari for allegedly interfering with that contract.

Yet aside from plaintiff's failure to cite any cases to support this dubious theory (the cases which defeat it are plenty), he still failed to allege or prove that Ms. Ferrari intentionally directed any tortious conduct to Illinois, or that she knew that plaintiff would suffer an injury here. Again, plaintiff is a Florida resident, Ms. Ferrari a Tennessee resident, and everything he alleged took place on St. Kitts. And his other inflammatory rhetoric in the response failed to show how personal jurisdiction over Ms. Ferrari would be appropriate. Accordingly, the Court should grant her motion to dismiss.

## REMINDER OF THE PERTINENT JURISDICTIONAL FACTS, WHICH PLAINTIFF LARGELY IGNORED IN HIS RESPONSE

Plaintiff hails from Florida, and Ms. Ferrari from Tennessee. (Third Am. Compl., ¶¶ 5, 8). They both went to veterinary school at RUSVM on St. Kitts. (*Id.*, ¶¶ 6, 9-10).[1] They lived together on St. Kitts for a few months in 2015, and Ms. Ferrari was supposedly solely to blame for their tumultuous relationship and eventual break-up. (*Id.*, ¶¶ 13-24). On April 6, 2016, after playing drinking games in a friend's apartment in Ms. Ferrari's complex (Starboard), Mr. Zara was arrested and beaten by St. Kitts police, allegedly based on Ms. Ferrari's false reports of his misconduct. (*Id.*, ¶¶ 25-34; *see also* R. 16-2, 5/24/16 statement filed in support of plaintiff's preliminary injunction motion, exhibit 1 here).

After plaintiff got out of jail, RUSVM's St. Kitts officials informed him that he was under investigation for violations of the school's code of conduct. (*Id.*, ¶¶ 40-45). That investigation and ensuing hearing were triggered by Ms. Ferrari's false reports to school officials, plaintiff alleged. (*Id.*). The hearing was held on April 15, 2016 at RUSVM on St. Kitts, and was conducted by St. Kitts officials. (*Id.*, ¶¶ 46-67; Fazio Decl., R. 21-2, ¶¶ 3-10). On April 18, 2016, in a letter printed on its St. Kitts' letterhead, RUSVM expelled plaintiff based on findings of harassment, abuse, violence, and other misconduct. (*Id.*, ¶ 68; Resp., ex. 5).

---

[1] In paragraph 5 of this third amended complaint, perhaps hoping that defendants and the Court would not notice, plaintiff *omitted* the "St. Kitts" portion of RUSVM's corporate name, a term he *included* in paragraphs 5 of his prior three complaints in this case.

Plaintiff did not allege in any of his now four complaints that Ms. Ferrari or anyone else made any report or statement to anyone in Illinois, or that anyone in Illinois had any involvement in plaintiff's investigation or expulsion. Further, plaintiff's response did not contest Ms. Ferrari's declaration that she made no such communication to Illinois, or that she had no other contacts with Illinois. Plaintiff merely argued in his response (though he did not allege in his complaints) that RUSVM and DVG are alter egos of each other, that his so-called "contract" with RUSVM was therefore with DVG in Illinois, and Ms. Ferrari's alleged interference with that contract subjected her to personal jurisdiction in Illinois courts. Frankly, plaintiff's arguments are frivolous.

### PLAINTIFF FAILED TO ALLEGE OR ESTABLISH THAT RUSVM AND DEVRY EDUCATION GROUP WERE ALTER EGOS OF EACH OTHER

It is well settled that Illinois courts do not have personal jurisdiction over a non-resident parent or subsidiary of an Illinois company, even where there is some shared management or administration between them, unless one company is a mere shell, or the parent exercises an unusually high degree of control over the subsidiary. *Abelesz v. OTP Bank*, 692 F.3d 638, 658-59 (7th Cir. 2012) (granting mandamus and reversing district court's finding of personal jurisdiction over foreign parent company, even though it shared directors and officers with Illinois subsidiary); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023-24 (7th Cir. 2009) (affirming district court's dismissal of parent company for lack of personal jurisdiction where parent company owned majority of stock of Illinois subsidiary, yet maintained separate existence); *New Process*

*Steel, L.P. v. PH GR, Inc.*, 107 Fed.Appx. 641, 642-43 (7th Cir. 2004) (affirming dismissal of Michigan subsidiary of Illinois parent company due to lack of evidence that parent was "agent" of subsidiary); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (affirming dismissal of parent company; "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary"); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998) (affirming dismissal of parent company due to separate existence with subsidiary); *Corporate Safe Specialists, Inc. v. Tidel Techs., Inc.*, No. 05-cv-3421, 2005 WL 1705826, at * 4 (N.D. Ill. July 15, 2005) (Moran, J.) (rejecting plaintiff's alter ego theory asserted against parent and subsidiary, even though they shared same CEO and filed consolidated financial statements and tax returns); *Old Orchard Urban L.P. v. Harry Rosen, Inc.*, 389 Ill.App.3d 58, 66 (1st Dist. 2009) (subsidiary was not subject to personal jurisdiction in Illinois; "the critical question is whether the Illinois subsidiary exists for no purpose other than conducting the business of its parent"); *Palen v. Daewoo Motor Co.*, 358 Ill.App.3d 649, 661 (1st Dist. 2005) (parent companies necessarily control, direct, and supervise subsidiaries to some extent, but are not subject to personal jurisdiction solely because of such control, direction and supervision).

Even a Seventh Circuit case that plaintiff cited in his response, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003), held that a subsidiary's contacts with the forum state were insufficient to confer personal jurisdiction over the nonresident parent. At 788-89, n. 17.

Here, in his response to Ms. Ferrari's motion, plaintiff attached papers showing only that two DVG Title IX coordinators provide support to RUSVM. None of those papers remotely showed that RUSVM was a mere shell for DVG, or that DVG exercised any degree of control over RUSVM significant enough to establish that they were the same entity. In fact, as evidence of their separate existence, exhibit 3 to the response says that a victim of gender discrimination may file a formal complaint "with a designated local campus administrator" or through a Title IX coordinator. (R. 35-3, p. 8 of 21, "**Reporting**"). Similarly, exhibit 4 to the response has RUSVM's St. Kitts address on the last page. (R. 35-4, p. 6 of 6).

Further, even if the Court considered the materials which plaintiff attached to his response to DVG's and RUSVM's motion (R. 34), such evidence is still insufficient. Those materials include only consolidated financial statements, identification of DVG's Title IX coordinators, and a little bad press against DEG. None of that material shows anything but a normal parent-subsidiary relationship. *See Central States*, 230 F.3d at 945 ("corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for the

- 5 -

purposes of personal jurisdiction"); *Corporate Safe Specialists*, 2005 WL 1705826 at * 5 (consolidated financial statements and tax returns are part of a normal parent-subsidiary relationship; they do not confer personal jurisdiction over a nonresident affiliate).

### **REGARDLESS, THERE IS STILL NO PERSONAL JURISDICTION OVER MS. FERRARI**

Even if the Court somehow found that RUSVM was subject to jurisdiction in Illinois as DVG's subsidiary, there is still no personal jurisdiction over Ms. Ferrari. In intentional tort cases, courts find personal jurisdiction against nonresident defendants only where they aimed their tortious conduct at Illinois, the "effect" was felt in Illinois, and they knew such harm was likely to be suffered. *See Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*, No. 04-cv-7624, 2005 WL 396304, at * 3 (N.D. Ill. Feb. 16, 2005) (Conlon, J.) ("under the 'effects doctrine,' personal jurisdiction over a nonresident defendant is proper when defendant's intentional tortious actions aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered," collecting cases). And as pointed out in Ms. Ferrari's initial brief (p. 4), any of RUSVM's Illinois contacts are irrelevant to whether she purposefully aimed any tortious conduct at Illinois. *See Richard Knorr Int'l, Ltd. v. Geostar, Inc.*, No. 08 C 5414, 2010 WL 1325641, at * 4 (N.D. Ill. Mar. 30, 2010) (Coar, J.) (co-defendants' Illinois contacts may not be combined in analyzing personal jurisdiction over each of them).

Here, plaintiff failed to allege in his complaints or establish in his response any three of those requirements: (1) conduct aimed at Illinois, (2) injury suffered in Illinois, or

(3) Ferrari's knowledge that an injury would be suffered in Illinois. Assuming the truth of plaintiff's allegations of Ms. Ferrari's false reports, she made them to St. Kitts' police and RUSVM officials while she was on St. Kitts. No injury was suffered in Illinois – plaintiff is a Florida resident, who was expelled from a St. Kitts school. And Ms. Ferrari could not possibly have known that any injury would be suffered in Illinois.

Tellingly, plaintiff did not cite any cases in his response to support his argument that a nonresident is subject to jurisdiction in Illinois if she tortiously interfered with a foreign plaintiff's "contract" that was made in part in Illinois. Instead, plaintiff cited irrelevant cases in support of his strained argument that the Court's jurisdictional reach is malleable and all-inclusive. For example, *Linkepic*, the only case that plaintiff cited for any substance (resp., pp. 4-5, 7), involved an Illinois plaintiff whom was victimized by nonresident defendants' allegedly fraudulent statements and other conduct aimed at Illinois. 2015 WL 7251935, at * 1. But because Mr. Zara is a Florida resident and no tortious conduct was aimed at Illinois, *Linkepic* is of no bearing here.

And as pointed out in Ms. Ferrari's initial brief, courts routinely dismiss cases for lack of personal jurisdiction even where plaintiffs resided or did business in Illinois, and where defendants had at least minimal contacts with Illinois. (Defs.' 6/8/16 Br., R. 18, pp. 7-8). In *Goldberg v. Miller*, 874 F.Supp. 874 (N.D. Ill. 1995), the court dismissed an Illinois company's tortious interference claim against a Maryland company for sabotaging plaintiff's contract to purchase a California insured's life insurance proceeds. The court

- 8 -

found that even though plaintiff may have suffered an injury in Illinois, and even though the alleged Maryland interferer called and sent letters to plaintiff in Illinois to discuss its contract with the California insured, those contacts were too attenuated with Illinois to justify personal jurisdiction over the Maryland company. *Id*., at 877.

Here, plaintiff did not allege or prove that Ms. Ferrari had any communication with anyone in Illinois, that he suffered any injury in Illinois, or that Ms. Ferrari knew or should have known that he would suffer an injury here. Nor is there any other allegation or evidence to suggest that Ms. Ferrari could or should have anticipated being sued in Illinois for reporting plaintiff to the St. Kitts police and to RUSVM's St. Kitts administration, over 2,000 miles away and in another country. Accordingly, plaintiff's claims against her should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in her initial 6/8/16 brief (R. 18), the Court should grant Ms. Ferrari's Rule 12(b)(2) motion, and should dismiss the claims against her for lack of personal jurisdiction.

| | |
|---|---|
| DATE: July 1, 2016 | Respectfully submitted, |
| Scott A. Schaefers<br>BROTSCHUL POTTS LLC<br>30 N. LaSalle St., Ste. 1402<br>Chicago, IL 60602<br>Phone: (312) 268-6795<br>Email: sschaefers@brotschulpotts.com | ALEXA FERRARI, Defendant.<br><br>By: /s/ *Scott A. Schaefers*<br>Scott A. Schaefers, one of her attorneys |

## **CERTIFICATE OF SERVICE**

      Scott A. Schaefers, an attorney for defendant Alexa Ferrari, certifies that on **July 1, 2016**, he served a copy of her **Reply Support of her Fed. R. Civ. P. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction** on the parties' counsel of record via the Court's CM/ECF system.

                                                                     */s/ Scott A. Schaefers*
                                                                        Scott A. Schaefers